UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10058-RGS |
| | ) | |
| JOSE JIMENEZ | ) | |

**MOTION FOR DISCOVERY**

Defendant Jose Jimenez hereby moves for an order directing the government to provide the following discovery. Mr. Jimenez requested the following discovery by letter dated May 20, 2005. The government responded by letter dated June 3, 2005. The parties are unable to resolve their differences with respect to the following requests for the reasons set forth below.

**Requests For Specific Exculpatory Information**

Mr. Jimenez made specific requests for particular categories of exculpatory information the government is required to disclose by rule and by the United States Constitution as interpreted by the United States Supreme Court in cases that include *Kyles v. Whitley*, 514 U.S. 419 (1995), *Brady v. Maryland*, 373 U.S. 83, 87, (1963), *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Osorio*, 929 F.2d 753 (1st Cir. 1991) and *United States v. Bagley*, 473 U.S. 667 (1985). Remarkably, the government responded largely by objecting to Mr. Jimenez's specific requests and repeating *ad nauseum* throughout its response to Mr. Jimenez's requests a refrain that it "will produce in accordance with the timing requirements established by Local Rule 116.2 all information that is exculpatory within the meaning of *Brady*, *Giglio*, and Local Rule 116.2." June 3 letter at 3.

The court should not accept the word of this United States Attorney's Office that it understands and intends to comply with its discovery obligations because it has demonstrated by its actions in case after case over time that it does not. Just last month, Vincent Ferrara was re-sentenced and set free by Judge Wolf because of the government's "egregious violation of its clear constitutional duty to disclose material evidence negating guilt to defendants." *See* Memorandum and Order Concerning Resentencing, May 13, 2005 at 51, Criminal No. 00-11693. *See also* Memorandum and Order dated April 12, 2005, *United States v. Ferrara*, 1005 WL 903196 (D. Mass. Apr. 12, 2005) (detailing court's findings that the government "violated its clearly established constitutional duty to disclose to [defendant], before trial, important exculpatory information that directly negated his guilt" on charges that he was complicit in a murder).

In August 2004, Chief Judge Young entered an order vacating the conviction of Kenneth Conley and dismissing all charges because the government had withheld crucial exculpatory information and had deprived Conley of a fair trial. *See* Memorandum and Order dated August 18, 2004, *United States v. Conley*, Criminal No. 01-10853-WGY. Chief Judge Young noted that the government's non-disclosure in *Conley* was part of a chronic problem: "[i]n this District, the government has a sorry record stretching back at least a decade of failing to make the disclosures required by law. *See, e.g., United States v. Coppola*, No. 03-10289 (D. Mass. filed Aug. 27, 2003); *United States v. Rodriguez*, No. 01-10206." Memorandum and Order at 19 n.8.

Judge Wolf noted in 2000 that "the failure of the United States Attorney's Office and federal investigative agencies to satisfy their discovery obligations are unfortunately part of a long pattern." *United States v. Diabate*, 90 F. Supp. 2d 140, 144 (D. Mass.

2000).  *See also United States v. Salemme*, Sept. 15, 1999 decision at 24-25 and 282-285, Wolf, J.; *United States v. Williams*, Crim. No. 98-10386-MLW, Nov. 22, 1999 Tr. at 116-89; *United States v. Restreppo*, 59 F. Supp. 2d 133 (D. Mass. 1999).

Judge Woodlock put it like this six years before Judge Wolf wrote *Diabate*. Explaining his finding that the government's failure to preserve and disclose Jencks material was not excusable negligence, but a deliberate and knowing failure to do what the law clearly requires, Judge Woodlock wrote:

> To understand why this is so, a page of history is worth a volume of logic. Given the historic pattern in the treatment of disclosure responsibilities in the United States Attorneys Office for this District, it does not require any strain to find that the disclosure responsibilities were not undertaken in good faith. This case presents yet another example of concerted indolence in pursuing disclosure by the United States Attorney's Office and a willful blindness to the failure of its agents who had disclosure duties to fulfill them. This pattern is evident in case law from the Court of Appeals over the past decade.

*United States v. Mannarino*, 850 F. Supp. 57, 71 (D. Mass. 1994).

This United States Attorney's Office's historical failure to comply with its discovery obligations has not escaped the notice of the First Circuit Court of Appeals either.  In a case where the government offered "several layers of lame prosecutorial excuses" for its failure to provide required discovery, the court noted that "the government's reluctance freely to furnish automatic discovery materials was chronic." *United States v. Hastings*, 847 F.2d 920, 922 (1st Cir. 1988).

Mr. Jimenez has made specific requests for particular categories of exculpatory material and has supported each request with citation to controlling authority.  It has long

been established that doing so is the better practice, as the Supreme Court explained in

*Agurs*:

> [A] brief comment on the function of the request is appropriate. … It [gives] the prosecutor notice of exactly what the defense desired. Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.

*United States v. Agurs*, 427 U.S. 97 at 106 (1976). If requested information is colorably material, it is discoverable. It is the equivalent of no answer to object without explanation that the request is beyond the scope of the government's concept of what its discovery obligations are.

The court should order the government to provide the following exculpatory information. Letter headings correspond to the requests as they were set forth in Mr. Jimenez's May 20, 2005 discovery letter.

**(a) Criminal Records.**

All information about each witness' arrest and conviction record, criminal activity and misconduct, including, but not limited to:

(1) The full record (including certified copies) of federal or state convictions, whether misdemeanor or felony. Defendant requests the court to order the government to obtain such criminal records (other than for law enforcement witnesses, and witnesses such as record-keepers). *See Davis v. Alaska*, 415 U.S. 308, 316 (1974); *Ouimette v. Moran*, 942 F.2d 1, 12 (1st Cir. 1991) ("'[N]o matter more material than a complete record of the State's

    star witness ... to be used for demonstrating the unworthiness of belief of his testimony ... .'");

(2) All information known to the government of conduct which constitutes a crime under federal or state law for which the witness could be prosecuted. *See Osorio*, 929 F.2d at 756-58; *Owens*, 933 F. Supp. at 88;

(3) A full statement of all criminal prosecutions and investigations against any prospective witness and of all civil or administrative actions or investigations against the witness, regardless of whether or not these cases are the subject of promises, rewards or inducements, *see United States v. Bonanno*, 430 F.2d 1060, 1062 (2d Cir.) (requiring disclosure of indictment of witness so that defendant could investigate all promises), *cert. denied*, 400 U.S. 964 (1970);

(4) A full statement of whether any witness was, at any time during the investigation or prosecution of this case, on probation, parole, supervised release or some other form of government supervision, or had any criminal charges outstanding, *see Davis*, 415 U.S. at 317; and

(5) The prison records of any witness who has been incarcerated in federal or state prison.

**Authority.** *Kyles*, 115 S.Ct. at 1572; *Davis*, 415 U.S. at 316-17; *Osorio*, 929 F.2d at 758 (government should have disclosed information that key witness had engaged in extensive drug trafficking for which he had not been charged); *Alford v. United States*, 282 U.S. 687, 693 (1931) (prior criminal conduct is relevant where the witness may have been promised or believed that his cooperation would lead to immunity); *Devose v. Norris*, 867 F. Supp. 836, 849 (E.D. Ark. 1994) (conviction reversed where government failed to disclose prior disciplinary action against witness for theft and making false statements to supervisor and prosecuting attorney while employed as a police officer).

**(e) Credibility.**

All information bearing upon the credibility of all witnesses, including, without limitation:

(1) all inconsistent statements by a witness, *see Kyles*, 115 S.Ct. at 1569-71; *Owens*, 933 F. Supp. at 87; *United States v. Pellulo*, 14 F.3d 881, 886 (3rd Cir. 1994) ("an IRS memorandum detailing an interview with [a witness] which set forth facts inconsistent with the testimony of [the witness] ... qualifies as *Brady* evidence);

(2) all false statements made by a witness (or omissions of material facts) during the course of interviews by law enforcement officials, *see Kyles*, 115 S.Ct. at 1571-73;

(3) all bias, prejudice, hostility, personal interest, financial interest or special relationship that could cause the witness to testify in favor of the government or against any defendant, *see Kyles*, 115 S.Ct. at 1571-72 *Owens*, 933 F. Supp. at 87; *Snell*, 899 F. Supp. at 23; *United States v. Cooper*, 662 F. Supp. 913, 99 (D.R.I. 1987);

(4) all evidence of poor memory, in general or with respect to the events in question, including any statements by a witness concerning same;

(5) all physical, mental, visual, or psychiatric treatments and/or impairments and treatment (including legal or illegal use of drugs and excessive use of alcohol) which could affect the witness' accuracy, and full details concerning same, *see Pennsylvania v. Ritchie*, 480 U.S. at 60- 61 (evidence of a witness emotional impairment is discoverable); *United States v. Barrett*, 766 F.2d 609, 615-16 (1st Cir.) (evidence of psychiatric treatment), *cert. denied*, 474 U.S. 923 (1985); *United States v. Butt*, 955 F.2d 77, 82 (1st Cir. 1992) (mental instability) *United States v. Collins*, 472 F.2d 1017, 1018-19 (5th Cir. 1972)(drug or alcohol addiction or abuse), *cert. denied*, 411 U.S. 983 (1973); *United States v. Fowler*, 465 F.2d 664, 665-66 (D.C. Cir. 1972) (same).

(6) all results of all scientific or quasi-scientific tests, such as polygraphs, which fail to conclude that a witness has been completely truthful with respect to any statement, *see Jacobs v. Singletary*, 952 F.2d 1282 (11th Cir. 1992) (government's failure to disclose witness's polygraph testimony which significantly clashed with his testimony at trial was *Brady* violation);

(7) all evidence that a witness has a poor reputation for telling the truth or has engaged in any conduct probative of untruthfulness, *see Kyles*, 115 S.Ct. at 1572;

(8) all information tending to show a motive for any witness to curry favor with the government; and

(9) all information tending to show that a witness has a relationship with any other witness, informant or government agent.

**(f) Inconsistent statements.**

All inconsistent statements between different witnesses concerning any facts material to the investigation, defense or prosecution. *See Kyles*, 115 S.Ct. at 1569-71; *Owens*, 933 F. Supp. at 87.

**(g) Law enforcement personnel.**

All information about whether any law-enforcement agent participating in the investigation or trial of this case has been the subject of an investigation for disciplinary action or criminal prosecution, or the subject of disciplinary action or criminal prosecution, any of which were for conduct involving false statements, perjury, obstruction of justice, receipt of gratuities or violation of rights of a criminal suspect or defendant.

> **Authority.** *United States v. Garrett*, 542 F.2d 23 (6th Cir. 1976) (error to foreclose discovery of undercover agent's disciplinary records relating to his use of narcotics and failure to submit to urinalysis); *Brooks*, 966 F.2d at 1503 (government's duty to produce exculpatory material extended to local police department's homicide and Internal Affairs Division files); *United States v. Henthorn*, 931 F.2d at 31 (government's failure to examine personnel files upon a defendant's request for production of exculpatory material was reversible error).

**(i) Contradictory information.**

All evidence tending to undercut in any way the credibility of the government's evidence or of the allegations in the indictment.

**Other Discovery Requests**

2. **Rule 16(a)(1)(F) and (G)**

Pursuant to Fed. R. Crim. P. 16(a)(1)(F), defendant requests that the government produce all reports of examinations and tests and that the government permit defendant to inspect and to copy or photograph all such results or reports in the possession, custody or control of the government, of which the government knows or through due diligence should know of, and which are material to preparing the defense or intended by the government for use in its case-in-chief.

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), defendant requests that the government disclose, no later than 45 days before trial, all testimony the government intends to offer under Fed. R. Evid. 702, 703 or 705 in its case in chief at trial, including but not limited to the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications.

> **Authority.** *United States v. Richmond*, 153 F.R.D. 7 D. Mass 1994) ("[I]n order to serve the purposes of the Rule, the expert's written summary must be disclosed to defendant's counsel not less than forty-five calendar days before trial").

The government responded by stating that it will abide by a scheduling order and whatever terms the court sets regarding expert disclosure. Mr. Jimenez requests that the court require the government to provide all of the discovery described in this request.

### 4. Preservation and Production of Notes

Defendant requests that the government preserve all contemporaneous notes, memoranda, statements, reports, surveillance logs tape recordings and other documents memorializing matters relevant to the charges contained in the indictment made by or in the custody of any law enforcement officer whose agency at the time was formally participating in an investigation intended, in whole or in part, to result in a federal indictment, including all raw notes whether or not the substance of such notes is incorporated in a written report, and all rough drafts of reports. Defendant requests production of all notes described in Local Rule 116.9 and herein to the extent such notes constitute Jencks Act or *Brady* material.

> **Authority:** 18 U.S.C. § 3500; *United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976) (requiring law enforcement agents to preserve original notes taken during interviews with prospective government witnesses or with an accused in order "to permit courts to play their proper role in determining what evidence must be produced pursuant to the Jencks Act or other applicable law"); *Brady*, *supra*.

### 5. Early release of Jencks Act material

Defendant requests that the government produce Jencks Act material no later than 30 days before trial. This request pertains only to Jencks Act material that is not exculpatory. Exculpatory witness statements should, of course, be turned over as part of automatic discovery.

> **Authority**. *Snell*, 799 F. Supp. at 24 ("nothing in the statute, preempts the court's ability, consistent with its obligations over case management, to order earlier disclosure than required by the Act"); *United States v. Campagnuolo*, 592 F.2d 852, 859 n. 3 (5th Cir. 1979)(early release is "salutary practice"); *United States v. Hubbard*, 474 F. Supp. 64 (D.D.C. 1979)(holding government to promise of early Jencks production); *United States v. Narcisco*, 446 F. Supp. 252, 270-71 (E.D. Mich. 1977)(ordering pretrial disclosure to promote efficiency and fairness).

The government responded by stating that it will provide Jencks material when it is required to do so, which presumably means at trial once the witness has finished direct testimony. That is a very unusual response. This request typically results in the government promising to disclose Jencks material in advance of trial. The court should make clear to the government that if it indeed will abide by the letter of the Jencks Act in this case, it will give the defendant whatever continuances are necessary at trial.

        JOSE JIMENEZ
         By his attorney,

/s/ *E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
One Commercial Wharf North
Second Floor
Boston, MA  02110
(617) 742-9099

Certificate of Service

I, E. Peter Parker, certify that I served a copy of this pleading on AUSA B. Stephanie Siegmann on July 5, 2005.

/s/ *E. Peter Parker*
E. Peter Parker