UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. )    CRIMINAL NO. 05-10058-RGS
)
JOSE JIMENEZ a/k/a BARRY )
ABRAHAM a/k/a MICHAEL IAN )
FIGUEROA a/k/a DAVID )
DAVIDSON, )
)
Defendant. )


GOVERNMENT'S MOTION TO STRIKE AND OPPOSITION TO
DEFENDANT'S MOTION FOR DISCOVERY

The United States of America, by and through its attorneys,

Michael J. Sullivan, United States Attorney, and Assistant U.S.

Attorney B. Stephanie Siegmann, hereby moves to strike

defendant's discovery motion, filed on July 5, 2005, on the

grounds that the motion fails to comply with the Local Rules, is

overbroad and contains sweeping requests for information which go

beyond the requirements of the Local Rules of this Court and case

law governing pretrial discovery.  In the alternative, the

government requests that the Defendant's motion for discovery be

denied in its entirety.

The defendant's requests include information already

produced and covered by automatic discovery under Local Rule

116.1.  Therefore, the motion violates Local Rule 116.3(D), which

provides, in part, as follows:

> A defendant participating in automatic discovery
> must not request information expressly required
> to be produced under L.R. 116.1.

In addition, prior to filing the motion, the defendant did not confer with the government in order to eliminate or narrow areas of disagreement or so certify in his motion.  Therefore, the motion violates Local Rule 116.3(F).

The extent of permissible pretrial discovery is, of course, controlled and limited by Fed. R. Crim. P. 16, the Local Rules of this Court and Brady v. Maryland, 373 U.S. 83 (1963) and its progeny.  A prosecutor is not required to make files available to a defendant for an open-ended "fishing expedition" for possible Brady material. United States v. Andrus, 775 F.2d 825, 842-43 (7th Cir. 1985); United States v. Davis, 752 F.2d 963, 976 (5th Cir. 1985).  Moreover, Brady does not require the government to disclose evidence available to the defense from other sources, evidence the defendant already possesses, or evidence the prosecutor does not possess.  United States v. Hicks, 848 F.2d 1, 3-4 (1988); United States v. Ramirez, 810 F.2d 1338, 1343 (5th Cir.), cert. denied, 484 U.S. 844 (1987); United v. Mabry, 808 F.2d 671, 686-87 (10th Cir.), cert. denied, 484 U.S. 874 (1987).

By his motion, the defendant seeks (1) disclosure of exculpatory evidence, impeachment evidence regarding all law enforcement personnel who participated in this investigation or testify at trial, and agent notes, and (2) early discovery and production of Jencks materials and impeachment evidence (beyond the categories of information required to be disclosed under L.R.

116.2).  Despite the fact that disclosure (and timing of same) of
the majority of the materials requested by the defendant is
governed by the Local Rules of this Court, the defendant does not
provide any compelling, case-specific reasons why the presumptive
deadlines for disclosure under the Local Rules should be
abandoned particularly when the parties in this matter are
participating in automatic discovery.  The Local Rules provide an
orderly framework and timing for discovery of the information
requested in the defendant's motion and, as explained in more
detail below, there is no reason why the Court should abandon
their application in this case.

> **A.    Automatic Discovery by the Government**

On April 20, 2005 (and in supplemental letters dated April
29, 2005, May 3, 2005, and June 24, 2005), the government
provided the defendant with the automatic discovery required
under Rule 116.1 of the Local Rules of the United States District
Court for the District of Massachusetts.  See copy of
Government's Automatic Discovery Letter filed herewith.  The
government's discovery letters included all information required
to be produced under Local Rule 116.1(C) (including that
information required to be produced under Fed. R. Crim. P. 16 and
Local Rule 116.2(B)(1)).  As shown in the government's discovery
letters, the government's discovery production was large and
comprehensive.  To date, over 850 pages of documents, two audio

cassettes, and several compact disks have been produced to the
defendant.  Furthermore, regarding exculpatory evidence, in
compliance with the Local Rules, the government advised the
defendant that it was not aware of any exculpatory evidence.
Specifically, in its Automatic Discovery Letter dated April 20,
2005, the government informed the defendant:

> With respect to the government's obligation under
> Local Rule 116.2(B)(1) to produce "exculpatory evidence"
> as that term is defined in Local Rule 116.2(A), the
> government states as follows:
> The government is aware of no information or materials
> relating to this case of the types described in Local
> Rule 116.2(B)(1).

**B.   Discovery Letter Request by Defendant**

On May 20, 2005, the defendant served the government with a
eight page letter essentially requesting the same materials
previously provided in automatic discovery and other items the
defendant is clearly not entitled to under the Local Rules.  A
copy of that letter was electronically filed with Court as Docket
#19.  This letter also contained five specific discovery requests
not addressed by the Local Rules, to which the government
responded and as a result of which, the government produced
additional information to the defendant.  These requests are not
the subject of defendant's motion.

The government promptly responded to the defendant's
discovery letter on June 3, 2005, a copy of which was
electronically filed with the Court as Docket #20, and objected

4

to providing the majority of the requested information[1] since it either had previously been provided or is expressly disallowed under the Local Rules.  For the most part, the government responded to the approximately 20 requests, which are already subsumed in the Local Rules, by stating

> The government objects to this request on the grounds that this request is covered by automatic discovery under Local Rule 116.1(C) (including the incorporation of Local Rule 116.2) and, therefore, it is barred by Local Rule 116.3(D).  Without waiving this objection, the government states that it has complied, and will continue to comply with Local Rule 116.2 regarding the Disclosure of Exculpatory Evidence.  The government will produce in accordance with the timing requirements established by Local Rule 116.2 all information that is exculpatory within the meaning of <u>Brady</u>, <u>Giglio</u>, and Local Rule 116.2.

The only materials that have not been provided to the defense by the government to date are: (1) *Brady/Giglio* impeachment material (if any exists) of witnesses whom the government anticipates calling in its case-in-chief, (2) agent notes, and (3) statements or grand jury testimony falling within the purview of the <u>Jencks</u> Act.  However, in accordance with Local Rule 116.2(B)(2), the government agrees to disclose the <u>Brady/Giglio</u> and <u>Jencks</u> materials not later than twenty-one (21) days before the start of trial.  As indicated in the government's letter to the defense, the government objects and declines to

---

[1]In response to defendant's specific discovery requests in Section A of counsel's letter, the Government produced any documents that existed that were responsive to the five requests.

produce the remaining information requested -- impeachment
information that exceeds the scope of the Local Rules and <u>Brady</u>
and its progeny, including impeachment information regarding non-
testifying law enforcement witnesses.

**C.    The Defendant's Discovery Motion**

As with defendant's discovery letter, his discovery motion
covers several categories of discovery: 1) exculpatory
information and early disclosure of impeachment material; 2)
impeachment information regarding law enforcement personnel who
participated in the investigation or testify at trial; (3) agent
notes; 4) early disclosure of <u>Jencks</u> material; and (5) Rule 16
materials regarding tests and experts.   Each discovery category
is discussed below.

1.   <u>Exculpatory Evidence and Early Disclosure of Impeachment
     Material</u> - Items Described in Sections (a), (e), (f),
     and(i)of Defendant's Motion

As discussed above and in the government's discovery
letters, the government has made the requisite disclosures about
exculpatory evidence in its automatic discovery letter pursuant
to Local Rules 116.1(C) and 116.2(B)(1) and will make the
requisite disclosures under Local Rule 116.2(B)(2) and Fed. R.
Crim. P. 26.2 in the time and manner provided in those rules and
Local Rule 117.1(A)(4),(5).   The defendant seeks broad categories
of exculpatory information.   Many of these requests are subsumed
within the Local Rules.   The remaining requests are outside the

scope of the government's discovery obligations.  Accordingly,
these requests should be stricken for failing to comply with the
Local Rules and alternatively, denied.

Notwithstanding defendant's inflammatory accusations against
the United States Attorney's Office, as a threshold matter, the
government states that it is well aware of its constitutional and
statutory obligations to produce exculpatory material as required
by Brady and its progeny.  See United States v. Williams, 792 F.
Supp. 1120 (S.D. Ind. 1992) (where government acknowledges its
continuing obligation to disclose exculpatory information, court
need not compel specific exculpatory discovery requests well in
advance of trial where defendants have not offered any evidence
of non-compliance by the government).  It is also aware of its
duty to disclose information that "could be used to impeach a key
government witness." United States of America v. Coppa, 267 F.3d
132, 135 (2nd Cir. 2001).  However, "[t]hose portions of
defendant's requests which go further than Brady need not be
disclosed." United States of America v. Coggs, 752 F. Supp. 848,
849 (N.D. Ill. 1990).

Here, defendant's motion for discovery is nothing more than
a generalized request for purportedly exculpatory and impeachment
information, which is in large part unsupported by, and in part,
in direct conflict with Fed. R. Crim. P. 16 and the Brady-Aqurs
doctrine.  See United States v. Aqurs, 427 U.S. 97 (1976); Brady

v. Maryland, 373 U.S. 83 (1963).  Under the guise of seeking what is constitutionally required, the defendant is attempting to obtain pre-trial discovery of nondiscoverable information and early disclosure of impeachment information that the government is not obligated to produce until twenty-one days before trial.

As noted above, pursuant to Local Rules 116.1 and 116.2, the government has already notified the defendant that it is unaware of any exculpatory material as described in Local Rule 116.2(B)(1).  To the extent that the defendant seeks information beyond that required by Brady, the government opposes the defendant's motion and individual discovery requests for such information.  These efforts by the defendant to rummage through the government's files is contrary to well-established law and should be rejected.

There is a limit to the scope of material to which the defendant is entitled under Brady.  Brady and Agurs, require that the government turn over to a defendant any evidence which would be exculpatory to the defendant, and evidence which would impeach government witnesses at trial, including promises, rewards or inducements.  In addition, Giglio v. United States, 405 U.S. 150 (1972), requires the government to disclose any immunity agreements entered into with the witnesses called by the government at trial.  It is well established, however, that Giglio materials need not be produced until trial, and,

8

therefore, the government opposes any motion for early disclosure of impeachment material. United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2nd Cir. 1974), *cert. denied*, 420 U.S. 393 (1975); United States v. Frumento, 405 F. Supp. 23, 32 (E.D. Pa. 1975); United States v. Leta, 60 F.R.D. 127, 131 (M.D. Pa. 1973).

In Section (a) of its motion, the defendant seeks a broad category of "exculpatory information": "All information about each witness' arrest and conviction record, criminal activity and misconduct . . ." This request is unlimited in scope. Further, the defendant requests the government to obtain information that he, through his counsel, can as easily obtain as the government. He requests the government to obtain the full record of federal and state convictions (including certified copies).[2] See Def. Mot. at p. 4 §(a)(1).

In the next request, the defendant seeks "[a]ll information known to the government of conduct which constitutes a crime under federal or state law for which the witness could be prosecuted." The information sought by this request is covered by Local Rule 116.2(e). To the extent that this request seeks information that is beyond the scope of the local rule, the government objects to providing evidence of any crime that

---

[2] This request should also be denied because it is already addressed by the Local Rules. Further, in compliance with Local Rule 116.2(B)(1)(d) the government informed the defendant that it is unaware of any criminal record of any criminal record of any individual it anticipates calling in its case-in-chief.

violates any state law.  The government, however, notes that it
will produce any information known to it, of the commission of
crime that may cast doubt on the witness' credibility,
truthfulness, or accuracy twenty-one days before trial.  <u>See</u>
Local Rules 116.2(B)(2)(a)and(f).

    The defendant makes an even broader request under paragraph
(3) of the section entitled Criminal Records: "[a] full statement
of <u>all</u> criminal prosecutions and investigations against any
<u>prospective</u> witness and of <u>all</u> civil or administrative action or
investigations against the witness . . ." (emphasis added).  This
request is not limited in anyway.  It extends to any civil or
administrative action that occurred anytime and anywhere without
the knowledge of the government and/or witness.  It further
extends to civil or administrative actions unrelated to any
potential bias, credibility issue, or character for truthfulness.
This request should be denied on the grounds that it is overly
broad and groundless.

    The last request under section (a) of defendant's motion
similarly requests a broad category of information: the prison
records of any witness.  <u>See</u> p. 5 at (5).[3]  Like the other

_____

    [3]The request contained Paragraph (4) seeks information that
would be included in the witness' criminal records, which are
required to be produced by Local Rule 116.2(B)(1)(d).  To the
extent that it exceeds the scope of this Local Rule, the
government objects.  Specifically, the government objects to the
to unclarified and ambiguous request for information regarding
"some other form of government supervision."

objectionable requests, this request is unlimited in scope and by
its terms extends to any information kept by a prison regarding
an inmate.

In Sections (e) and (i),the defendant request information,
largely subsumed in Local Rules 116.1 and 116.2 or beyond the
scope of the government's discovery obligations.  The defendant
requests the following categories of information that the
government is already required to produce twenty-one days prior
to trial: inconsistent statements by a witness (defendant request
(e)(1)[4]); evidence of false statements made by a witness
(defendant request (e)(2)[5]); evidence of witness character of
untruthfulness (defendant request (e)(7)[6]); evidence of bias or
prejudice (defendant requests (e)(3) and (8)[7]); and information
that casts doubt on the credibility or accuracy of any witness
(defendant requests (e)(6) and (9)[8]).  These requests should be
stricken or alternatively, denied because they are merely

---

[4] This information is covered by Local Rule 116.2(B)(2)(b).

[5] This information is covered by Local Rule 116.2(B)(2)(a),
(e) and (f).

[6] This information is covered by Local Rule 116.2(B)(2)(f).

[7] Pursuant to Local Rule 116.2(B)(2)(a) and (d), the
government is required to produce "[a]ny information that tends
to cast doubt on the credibility or accuracy of any witness" and
"information reflecting bias or prejudice against the defendant".

[8] This information sought in this request to the extent it
is discoverable, is covered by Local Rule 116.2(B)(2)(a).

designed to obtain early disclosure of impeachment information that, for the most part, the government is expressly required to produce.  To the extent that the defendant requests information in request (e)(9)[9] beyond that which is required by Local Rule 116.2(B)(a) the government objects on the grounds that this request is overly broad and could require the government to disclose confidential information without any adequate justification.

Additionally, in Section (e), the defendant requests impeachment information that is not within the knowledge, or possession, of the government.  Further, the government is under no obligation to provide evidence which the defendant may obtain from other sources.  For instance, the defendant requests:

> (4) all evidence of poor memory, in general or with respect to the events in question, including any statements by a witness concerning same
>
> (5) all physical, mental, visual, or psychiatric treatments and/or impairments and treatment . . . which could affect the witness' accuracy, and full details concerning same

Def. Mot. at p. 6.  If the government has no notice of any physical or mental impairment, it should not be required to conduct an investigation of each of its witnesses to determine whether they have any health-related problem that the defense may

---

[9] This request seeks information regarding all potential relationships with any other witness, informant or government agent.

consider as constituting an impairment that could affect the witness' ability to testify accurately. Furthermore, the defense counsel has the same trial subpoena power as the government and can just as easily obtain documents and records from a third party.

Section (f) of the defendant's motion, which requests "all inconsistent statements" is expressly covered by Local Rule 116.2(B)(2)(c). The government therefore objects to this request on the grounds that it violates Local Rule 116.3(D). The government states that it will produce any such information that exists twenty-one days prior to trial and objects to the defendant's attempt to obtain early production of this information.

Based upon the foregoing, the government respectfully requests this court to strike all of the defendant's discovery requests in sections (a), (e), (f) and (i) of his motion, or alternatively deny them to the extent that they seek information beyond the requirements of the Local Rules, Fed. R. Crim. P. 16, <u>Brady</u> and its progeny.

2. <u>Impeachment Information Regarding Law Enforcement Personnel</u>

Through his motion, the defendant requests production of

[a]ll information about whether any law enforcement agent participating in the investigation or trial of this case has been the subject of any investigation for disciplinary action or criminal prosecution, any of which were for conduct involving false statements,

13

perjury, obstruction of justice, receipt of gratuities or violation of rights of a criminal suspect or defendant.

The government objects to this request on two grounds.

First, this request is overbroad in that it essentially seeks disclosure of the "personnel files" of all law enforcement witnesses. No First Circuit case requires the government to provide defense counsel with the "personnel files" of law enforcement officers who may testify at trial. The government counsel has no reason to believe nor has the defendant alleged any good faith reason to believe that the Springfield police officers and special agents of the Diplomatic Security Service and Social Security Administration, Office of the Inspector General, involved in this investigation have personnel files containing impeachment and/or exculpatory material within the meaning of <u>Brady</u> and its progeny. Thus, there is no reason to depart from the government's (Department of Justice ("DOJ")) standard <u>Giglio</u> policy.

In accordance with its <u>Giglio</u> policy, for every law enforcement witness it anticipates calling in its case-in-chief, the government has requested from the respective investigative agency the following categories of information: a) any finding of misconduct that reflects upon the truthfulness or possible bias of the individual; b) any past or pending criminal charge brought against the individual; c) any credible allegation of misconduct that reflects upon the truthfulness or possible bias of the

14

individuals that is the subject of a pending investigation; d)
any allegations which could not be substantiated, were found to
be not credible, or have resulted in the exoneration of the
individual insofar as those allegations 1) reflect upon the
truthfulness or bias of the individual and 2) were made by a
prosecutor, magistrate judge or judge or received publicity
requested that the respective law enforcement departments.
Government counsel will then notify defense counsel if the
agency's review of the personnel files reveals any Brady/Giglio
material.  This approach has been approved by the Ninth Circuit,
which issued the one of the opinions (United States v. Henthorn,
931 F.2d 29 (9th Cir. 1991)) upon which the defendant relies in
making this request.  In United States v. Jennings, 960 F.2d
1488, 1491-92 (9th Cir. 1992), the Ninth Circuit concluded that
the district court exceeded its authority by ordering the
Assistant U.S. Attorney to personally review the personnel files
of federal law enforcement officers, and explicitly approved
DOJ's procedure in which the personnel files of law enforcement
officers are examined by the particular agency's legal counsel,
who in turn notify the AUSA assigned to the case whether any
potential Brady material is discovered.

        Second, contrary to defendant's assertions that he's
entitled to the personnel files of all non-testifying law
enforcement agents, the government maintains that the scope of

15

disclosure should be limited to the personnel files of testifying law enforcement agents only, and should only include information which is "evidence of perjurious conduct or like dishonesty," which is all that was required by United States v. Henthorn, 931 F.2d at 30.  Defendant's reliance on United States v. Garrett, 542 F.2d 23 (6th Cri. 1976), to support his argument that he is entitled to this information is misplaced.  Indeed, Garrett did not hold that the records of every agent involved in the investigation of the case were discoverable, rather only the record of the agent who would be testifying, e.g., the undercover agent who was the key witness for the prosecution.  Likewise, the defendant's reliance on United States v. Brooks, 966 F.2d 1500, 1503-1504 (D.C. Cir. 1992), is also misplaced.  Brooks did not extend the government's duty to produce exculpatory information for every non-witness police officer who investigated the case, rather it addressed the disclosure of personnel records pertaining to a critical prosecution witness who had testified at an earlier trial in the same case.  Id. at 1502.  Similarly, the defendant's reliance on United States v. Henthorn, 931 F.2d at 31, is again misplaced.  The personnel files sought to be examined in Henthorn belonged to a testifying prosecutorial witness, not a non-witness.  In that case, the Court also opined that the files would not have to be turned over to the defendants unless they "contain information that is or may be material to

16

the defendant's case." Id.  This Court should therefore deny the defendant's discovery request contained in Section (g) of its motion.

3. Agent Notes

The government has notified all law enforcement agents and officers of its obligations to preserve contemporaneous notes, statements, reports, surveillance logs, tape recordings, and other documents memorializing matters relevant to the charges contained in the indictment as required by Local Rule 116.9. Prior to the detention hearing, the government produced all agent/officer notes that described statements made by the defendant.  The government further agrees to produce any agent notes that constitute Jencks materials or contain exculpatory information not otherwise provided in any report, memoranda, or document.  The government objects to the wholesale production of agent notes.

4. Early Production of Jencks Material

Defendant's motion regarding early production of Jencks materials should also be stricken or, in the alternative, denied. Under the Jencks Act, statements of government witnesses are not required to be produced until after they have testified.  18 U.S.C. § 3500.  Since, the timing of such production is often not workable, the Local Rules contemplate that the timing of such disclosures will be discussed at the initial pretrial conference.

17

<u>See</u> Local Rule 117.1(A)(5).  The defendant's request for the
production of <u>Jencks</u> at this stage is simply untenable,
particularly where, as here, the defendant gives no justification
for why this case requires special treatment.  Nonetheless, in
the interest of resolving this discovery issue, the government
agrees to produce <u>Jencks</u> materials twenty-one days before trial.

    5.  <u>Rule 16 Materials Regarding Tests and Experts</u>

The defendant has again requested the government to produce
all reports of examination and tests.  In its June 3, 2005 letter
to the defendant, the government informed the defendant that it
had produced all information falling under Fed. R. Crim. P.
16(a)(1)(F) on April 20, 2005 in its automatic discovery
package.[10]  The defendant also requested expert discovery pursuant
to Fed. R. Crim. P. 16(a)(1)(G) not later than 45 days before
trial.  The government responded that it would comply with any
scheduling order the court entered.  However, the government does
not object to the timing suggested by the defense as long as the
defense agrees to produces its expert discovery (written summary
of testimony the defense intends to offer under Fed. R. Evid.
702, 703, or 705, expert witnesses' qualifications, opinions, and
bases and reasons for those opinions) 30 days before trial.

----

[10]On April 20, 2005, the government produced to the
defendant "a copy of Fingerprint Analysis conducted by Detective
Brian Manley . . . as document bates labeled U.S. 0291."

## Conclusion

For the foregoing reasons, the defendant's motion should be stricken or, in the alternative, denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ B. Stephanie Siegmann
B. STEPHANIE SIEGMANN
Assistant U.S. Attorney

Dated: July 19, 2005

### Certificate of Compliance with Local Rule 7.1 and Certificate of Service

I do hereby certify that I have attempted to confer to narrow the issues set forth herein with Defendant Jose Jimenez's counsel, E. Peter Parker, Esq., and further certify that a copy of the foregoing motion and memorandum was served upon Mr. Parker by electronic notice on this 19th day of July 2005.

/s/ B. Stephanie Siegmann
B. Stephanie Siegmann
Assistant U.S. Attorney



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*                 *United States Courthouse,  Suite 9200*
                                                 *1 Courthouse Way*
                                                 *Boston, Massachusetts  02210*


                                                 April 20, 2005


***Via Hand Delivery***

E. Peter Parker, Esq.
One Commercial Wharf North
Second Floor
Boston, MA 02110

          Re:  <u>United States v. Jose Jimenez a/k/a Barry Abraham a/k/a</u>
               <u>Michael Ian Figueroa a/k/a David Davison</u>
               Criminal Action No. 05-10058-RGS

Dear Attorney Parker:

     Pursuant to Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2
of the Local Rules of the United States District Court for the
District of Massachusetts, the government provides the following
automatic discovery in the above-referenced case:

A.   <u>Rule 16 Materials</u>

1.   <u>Statements of Defendant under Rule 16 (a)(1)(A)</u>

     a.   <u>Written Statements</u>

     Enclosed are the following relevant written statements made
by the defendant Jose Jimenez a/k/a Barry Abraham a/k/a Michael
Ian Figueroa a/k/a David Davison ("Jimenez") in the possession,
custody or control of the government, the existence of which is
known to the attorney for the government:

          1)   Defendant's written statements on an application for
               U.S. passport (Enclosed as document bates labeled U.S.
               001);

          2)   Defendant's written statements on Miranda warning forms
               (Enclosed as documents bates labeled U.S. 0030-32);

3)    Defendant's signature on U.S. passport issued in the
      name Barry Abraham (Enclosed as document bates labeled
      U.S. 0078);

4)    Defendant's signature on social security number card
      issued in the name Barry Abraham (Enclosed as document
      bates labeled U.S. 0079);

5)    Defendant's statements made on applications for social
      security number cards in the names Jose Jimenez and
      Barry Abraham formerly known as Michael Ian Figueroa
      (Enclosed as documents bates labeled U.S. 0305-06,
      311);

6)    Handwritten notes containing the following: (1) names
      of credit agencies; (2) names of approximately 36
      persons and for each name, the person's date of birth,
      social security number, and place of birth or address
      or telephone numbers; (3) information concerning how to
      obtain birth or death certificates.  (Enclosed as
      documents bates labeled U.S. 0083-84, 153, 155-57, 608-
      09,629-31, 645);

7)    Defendant's statements contained on Change of Name
      Document filed with Hampden County Probate and Family
      (Enclosed as document bates labeled U.S. 0093);

8)    Defendant's signature on Massachusetts Driver's License
      issued in name Barry Abraham (Enclosed as document
      bates labeled U.S. 0277);

9)    Defendant's statements contained on Banknorth
      applications to open bank accounts in name Jose Jimenez
      and Barry Abraham (dated December 23, 2003) (Enclosed
      as documents bates labeled U.S. 0321 and 0328);

10)   Checks containing Defendant's signature as Barry
      Abraham (Enclosed as documents bates labeled U.S. 0353-
      367);

11)   Defendant's statements contained on Citizens Bank
      application to open account under name Barry Abraham
      (Enclosed as document bates labeled U.S. 0400);

12)   Defendant's statements contained on Rental Agreement
      and related documents for Storage Unit at Handy Self-
      Storage (Enclosed as documents bates labeled U.S. 0409-
      414);

13) Defendant's statements contained on applications for Massachusetts Driver's License and Duplicate License in name Barry Abraham (Enclosed as documents bates labeled U.S. 0437-439); and

14) Defendant's written statements made to the Springfield Housing Authority (Enclosed as documents bates labeled U.S. 0556, 558, 570, 572).

b.    <u>Recorded Statements</u>

Enclosed are compact disks bates labeled as U.S. 0575 and 578 containing copies of tape recordings of telephone conversations made by the defendant while detained at the Hampden County House of Corrections and Plymouth County Corrections Facility.  Additionally, an audiotape of the interrogation of Defendant that occurred on January 11, 2005 was produced to the Defendant on February 17, 2005.

c.    <u>Grand Jury Testimony of the Defendant</u>

The defendant Jimenez did not testify before a grand jury in relation to this case.

d.    <u>Oral Statements to Then Known Government Agents</u>

The following documents are enclosed:

Statements of the Defendant made to police officers and special agents from various federal agencies on January 11, 2005 (Produced to defense on February 14, 2005 and also enclosed as documents bates labeled U.S. 0026-27, 29).

2.    <u>Defendant's Prior Record under Rule 16 (a)(1)(B)</u>

Enclosed is a copy of the defendant's prior criminal record. <u>See</u> documents bates labeled U.S. 0289-90.

3.    <u>Documents and Tangible Objects under Rule 16(a)(1)(C)</u>

All books, papers, documents and tangible items which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial of this case, or were obtained from or belong to the defendant are enclosed herein as documents bates labeled U.S. 0001-806.  The entire Springfield Housing Authority file on

3

Yasira Williams has not been produced. I have only produced the documents, which I believe are relevant. Additionally, documents obtained from American Express concerning an account opened in the name Barry Abraham have also not been produced. If you would like to inspect these documents, I will make them available to you at a mutually convenient time. The documents produced by the government contain Fed. R. Crim. P. Rule 6(e) material and should be treated accordingly.

4.    <u>Reports of Examinations and Tests under Rule 16 (a)(1)(D)</u>

Enclosed is the following document:

A copy of Fingerprint Analysis conducted by Detective Brian Manley is enclosed as document bates labeled U.S. 0291.

B.    <u>Search Materials under Local Rule 116.1(C)(1)(b)</u>

Three search warrants have been executed in this case.

A search warrant was executed at 89 Longhill Avenue, Apt. 1C, Springfield, MA on January 11, 2005. A copy of the search warrant, application, and affidavit are enclosed as documents bates labeled U.S. 0002-10. A copy of the search warrant return will be provided to you under separate cover. Copies of the documents seized as result of this warrant and the arrest of the Defendant are enclosed as documents bates labeled U.S. 0071-287.

A search warrant was executed on Storage Unit Number 2330, Handy Self Storage, 40 Congress Street, Springfield, MA on February 18, 2005. A copy of the search warrant, application, affidavit, and return are enclosed as documents U.S. 0579-603. Copies of the documents seized as result of this warrant are enclosed as documents bates labeled U.S. 0607-777.

A search warrant was issued to search 26 recordable computer disks seized from Storage Unit 2330, Handy Self-Storage, 40 Congress Street, Springfield, MA. A copy of the search warrant, application, and affidavit are enclosed as documents U.S. 0778-806. These disks are still being forensically analyzed. Upon completion, the search warrant return and copies of the documents seized will be produced.

C.    <u>Electronic Surveillance under Local Rule 116.1(C)(1)(c)</u>

No oral, wire, or electronic communications of the defendant as defined in 18 U.S.C. § 2510 were intercepted relating to the charges in the indictment.

D.    Consensual Interceptions under Local Rule 116.1(C)(1)(d)

     There were no interceptions (as the term "intercept" is defined in 18 U.S.C. § 2510(4)) of wire, oral, or electronic communications relating to the charges contained in the indictment, made with the consent of one of the parties to the communication in which the defendant was intercepted or which the government intends to offer as evidence in its case-in-chief.

E.    Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)

     There is no conspiracy count charged in the indictment.

F.    Identifications under Local Rule 116.1(C)(1)(f)

     I have no information indicating that the defendant was the subject of an investigative identification procedure used with a witness the government anticipates calling in its case-in-chief involving a line-up, show-up, photo spread or other display of an image of the Defendant.  In the event that I become aware that such a procedure was used, I will advise you at that time and provide you with copies of any tangible evidence reflecting, used in, or memorializing, the identification procedure.

G.    Exculpatory Evidence Under Local Rule 116.2(B)(1)

     With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

     The government is aware of no information or materials relating to this case of the types described in Local Rule 116.2(B)(1).

H.    Other Matters

     The government is aware of its continuing duty to disclose newly discovered additional evidence or material that is subject to discovery or inspection under Local Rules 116.1 and 116.2(B)(1) and Rule 16 of the Federal Rules of Criminal Procedure.

     The government requests reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure and Local Rule 116.1(D).

Please call the undersigned Assistant U.S. Attorney at (617) 748-3191 if you have any questions.

Sincerely,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ B. Stephanie Siegmann
B. STEPHANIE SIEGMANN
Assistant U.S. Attorney

Enclosures

cc:  Thomas Quinn,
Clerk to Magistrate Judge Judith G. Dein
(w/o enclosure(s))