UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA    )
                           )
        v.                 )              Criminal No. 05-10058-RGS
                           )
JOSE JIMENEZ               )

**MOTION FOR REVIEW BY THE DISTRICT COURT
OF THE MAGISTRATE JUDGE'S DETENTION ORDER**

Defendant Jose Jimenez hereby moves, pursuant to 18 U.S.C. § 3145(b), for

revocation of the detention order entered by Magistrate Judge Dein on February 18, 2005.

The court should revoke the order of detention because Mr. Jimenez does not present a

risk of flight so serious that no conditions of release would be adequate to reasonably

assure his appearance.  To the contrary, Mr. Jimenez, a United States citizen, has stable

and strong ties to the community, a long-term marriage that has produced six children

ranging in age from two weeks to six years, a place to live with his family, a decent work

history and the promise of a job upon release.

More importantly, Mr. Jimenez' family desperately needs him.  His wife, Yasira

Williams, is raising and home-schooling six children under the age of six by herself.  It is

impossible for her to work.  With Mr. Jimenez detained, the family has had to resort to

public assistance.  To make matters worse, Ms. Williams is physically and emotionally

exhausted, has been diagnosed with post-partum depression (her youngest child is two-

weeks old) and presently is not capable of caring for her family on her own.

There are no countervailing factors that would rule out release on conditions.

Compared to many other defendants who come before the court, Mr. Jimenez is not

facing what would be considered a lengthy sentence if convicted.  This is not a five, ten

or twenty-year mandatory minimum case.  If convicted on all counts, Mr. Jimenez would

be exposed to an advisory sentencing guideline range of from ten to sixteen months (and

eligible for a split sentence of incarceration and home confinement) followed by a two-

year on-and-after sentence.  Mr. Jimenez has moved to dismiss the counts carrying the

on-and-after sentence.  If the court were to grant that motion, and if Mr. Jimenez were

convicted on the remaining counts, he already has done most, if not all, of the time the

advisory sentencing guidelines would call for.  Even if the court were to deny the motion

to dismiss, a two-year sentence does not present the same incentive to flee that a heavier

sentence more common in this court presents.

As grounds for this motion, Mr. Jimenez states as follows.

**Relevant Factual Background**

Mr. Jimenez is married to Yasira Williams and is the father of her six children, all

of whom have his last name: Mariam, age six; Farah, age four; Isa and Ishaqq, twins age

three; Muhammad, age one; and Sulaiman, who is but two weeks old.[1]  Mr. Jimenez was

the sole wage earner for the family.  He has been detained on this case since his arrest by

the Springfield Police on January 11, 2005.  His detention has rendered his wife and

children destitute.

With no income, Mr. Jimenez's family have lost their home.  They currently

reside at the Family Place Shelter in Holyoke.  Mr. Jimenez would be permitted to reside

there with his family if the court were to release him.  *See* September 21, 2005 letter from

Karen Girard, Program Director, attached hereto.  Mr. Jimenez, like the rest of his family,

---

[1]    The government has claimed that Mr. Jimenez and Ms. Williams are not married.
They are.  Attached hereto is a copy of a document attesting to their married status in
accordance with their Muslim faith.

would be eligible to participate in all programs and to receive all assistance offered to residents of the shelter.

Ms. Williams has also secured more permanent housing. She has the opportunity to lease an apartment located at 17 Sprague Street, West Springfield beginning October 1, 2005. Mr. Jimenez would be permitted to reside there as well and his name has been added to a draft lease Ms. Williams will execute.

Ms. Williams' already nearly-impossible situation of caring for and home schooling her six children without a stable home is even more precarious at present. She is physically and emotionally exhausted and is unable to care properly for her children without help. *See* August 29, 2005 letter from Catherine Smith, LICSW, attached hereto. She has been diagnosed with post partum depression and is receiving counseling. *See* September 21, 2005 letter from Catherine Smith, LICSW, attached hereto. Her young children are utterly dependent on her and her alone, with Mr. Jimenez in jail.

If released, Mr. Jimenez could not only help Ms. Williams when she needs it most, he could provide instant financial support for his family. *See* July 7, 2005 letter from Yasir Osman, Regional Manager of Propark, attached hereto (stating that Propark will employ Mr. Jimenez should the court release him on conditions). Undersigned counsel confirmed on September 19, 2005 Propark has a position for Mr. Jimenez. Mr. Osman informed counsel that Mr. Jimenez responsibilities will include maintenance and cleaning of Propark's facilities and cashier duties. Mr. Osman oversees six garages and ten parking lots in Springfield, Massachusetts.

Mr. Jimenez and Ms. Williams have made their home in Massachusetts for the past seven years. Ms. Williams has extensive family in the Springfield area including her

grandmother, father two uncles, two aunts and a number of cousins.  She and Mr.

Jimenez have been active members of the local Muslim community the entire time the

family has resided in the Springfield area.  *See* Letter from Chaplain Abdullah Abdul-

Rahim, attached hereto.

**The Charges**

The government alleges that Mr. Jimenez established the false identity of Michael

Ian Figueroa by obtaining a birth certificate and duplicate social security card in that

name.  The government further alleges that Mr. Jimenez then legally changed that name

to Barry Abraham in proceedings in the Hampden County Probate Court and

subsequently applied for a United States passport, a Massachusetts driver's license and

two bank accounts in the name of Barry Abraham.  From that alleged conduct, the

government has manufactured eight counts: passport fraud in violation of 18 U.S.C.

§ 1542; social security number fraud in violation of 42 U.S.C. § 408(a)(7)(B); presenting

false information to the Social Security Administration in violation of 42 U.S.C.

§ 408(a)(6); possession of false identification documents with intent to defraud the

United States in violation of 18 U.S.C. § 1028(a)(4); and aggravated identity theft in

violation of 18 U.S.C. § 1028A(a)(1) respectively.  *See* Indictment, Counts 1-5, 7-9.

The government also alleges that Mr. Jimenez used the name and social security

number of David Davidson to obtain telephone service from Verizon.  From this alleged

conduct, the government has added two counts: social security number fraud in violation

42 U.S.C. § 408(a)(7)(B); and aggravated identity theft in violation of 18 U.S.C.

§ 1028A(a)(1) respectively.  *Id*. Counts 6 and 10.

With the exception of the aggravated identity theft counts, the charged offenses carry statutory maximum sentences of three, five and ten years.  Under the advisory sentencing guidelines, the sentencing range for all offenses except aggravated identity theft is likely 10-16 months (U.S.S.G. §2L2.2 base offense level 8, plus 4 if defendant fraudulently obtained a United States Passport, less 2 for acceptance of responsibility, Criminal History Category III).  Mr. Jimenez has served over eight months since his January 11, 2005 arrest.

The two aggravated identity theft counts carry a two-year on and after sentence in addition to any sentence the court might impose for certain of the offenses set forth above.  *See* 18 U.S.C. § 1028A(a)(1).  The court has discretion to impose a single two-year on and after sentence for multiple violations of the statute.  *Id*. at (b)(4).  The court has scheduled argument on September 29, 2005 on Mr. Jimenez's motion to dismiss the two aggravated identity theft counts, in which Mr. Jimenez demonstrates that this relatively new statute (enacted in July, 2004) requires the possession or use of the means of identification of another living person.  There is no dispute here that the persons whose means of identification Mr. Jimenez allegedly possessed had been deceased for decades before the operative dates set forth in the indictment for such possession.  *See* Motion to Dismiss Counts Nine and Ten.

If the court were to dismiss counts nine and ten, Mr. Jimenez is close to having already served the 10-month low-end sentence provided for in the advisory sentencing guidelines.  Indeed, at a level 10, CH Category III, Mr. Jimenez would have been eligible under the old mandatory guideline regime for a split sentence of five months incarceration followed by five months of home confinement.  *See* U.S.S.G. § 5C1.1(d)

(permitting split sentences for Zone C offenders). He already has served three months more than the five-month minimum period of incarceration.

Even if the court were to deny the motion to dismiss, if he were convicted of aggravated identity theft, Mr. Jimenez could be facing the possibility of as little as 16 additional months of confinement. The court would be permitted to run concurrently on counts nine and ten a single two-year sentence and, in this era of advisory guidelines, would be free to impose a sentence requiring no incarceration on the other counts, or a term as low as one day, from which the two-years on and after would run. Even under a worst case scenario, there is no colorable argument here that the potential length of incarceration is such that the court could fashion no conditions that would reasonably assure Mr. Jimenez's release.

### The Detention Order

The government moved for detention based solely on risk of flight. *See* Memorandum and Order on Government Motion for Detention at 1, attached hereto. The Magistrate Judge allowed the motion, citing as grounds the strength of the evidence, the possibility of a two-year mandatory minimum sentence and Mr. Jimenez's possession of documents that included the school transcripts of 40 individuals and handwritten lists of identifying information of additional individuals. *Id*. at 8-9. The Magistrate Judge opined that "[t]he ease with which the defendant changes identities would make locating him very difficult." *Id*.

Contrary to that assertion, and as the Magistrate Judge herself noted in her order detaining Mr. Jimenez, it is by no means "easy" to change identities. *Id*. at 9 (citing among the factors warranting detention "the extent to which [Mr. Jimenez] has gone to

6

obtain these alternative identities"). A person wishing to change his identity must first

know where to get accurate biographical information and then successfully obtain it.

The person must then ask for and obtain a duplicate birth certificate. The person must

then parlay the birth certificate into a usable social security number. Only then can the

person obtain seemingly valid means of identification like a passport, driver's license or

other picture ID. None of this can be accomplished overnight or with a couple of

telephone calls. It involves yet another step and considerable time and effort to then

change a false identity in court to yet another false identity in probate court – as the

government has alleged Mr. Jimenez has done here.

　　　Whatever ability or facility for identity changing the government and the

Magistrate Judge thought Mr. Jimenez possessed before his arrest, it is abundantly clear

after his arrest he would be starting from scratch if he were inclined to change his identity

and disappear, which he is not. The government searched his home and a storage locker

he allegedly used, as well as a laptop computer and storage media, and seized everything

remotely related to identity changing. Mr. Jimenez has none of the raw materials

required. Nor does he have the financial resources to relocate his seven-member family

even if he did have the means and the inclination to change his identity.

　　　More importantly, the court can set conditions of release that will minimize if not

eliminate any risk that Mr. Jimenez will drop out of sight and emerge somewhere with a

new identity. Such conditions include: prohibiting his access to the internet or the use of

a storage locker; subjecting his person and his home to random search by pretrial

services; requiring that he be at home unless he is at work, obtaining necessary medical

treatment or observing his faith; and electronic monitoring third-party custodianship of

Ms. Williams to enforce all conditions.


## Conclusion

For all of these reasons, the court should revoke the detention order and release

Mr. Jimenez on the conditions set forth herein, or such other conditions as the Court

deems appropriate.


JOSE JIMENEZ
  By his attorney,

/s/*E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
One Commercial Wharf North
Second Floor
Boston, MA  02110
(617) 742-9099


Certificate of Service

I, E. Peter Parker, certify that I served a copy of this pleading on AUSA B. Stephanie Siegmann and on the Pretrial Services Office on September 22, 2005.


/s/ *E. Peter Parker*
E. Peter Parker

بِسْمِ اللهِ الرَّحْمَٰنِ الرَّحِيمِ



### Masjid At-Taqwa
1266 BEDFORD AVENUE BROOKLYN, N.Y. 11216

(718) 622-0800
Fax (718) 399-0341

February 25, 2005

To Whom It May Concern:

    I, Imam Siraj Wahhaj, performed an Islamic wedding ceremony for Mr. Jose Jimenez and Mrs. Yasira Williams on October 10, 1998 here at Masjid At-Taqwa.

It is incumbent upon all Muslims to get married according to the lawful ways of Islam. It is a choice not a requirement for Muslims to also get married according to the state. An Islamic marriage is a legitimate marriage as it is recognized in the eyesight of God.

If you have any questions or need further assistance on this matter, please refer to the above information for contact.

Sincerely,

Imam Siraj Wahhaj
Imam
Masjid At-Taqwa



A P/C Affiliated Corporation
288 Oak Street, Suite 1L
Holyoke, MA  01040
Family Place Shelter

September 21, 2005

To Whom It May Concern:

Jose Jimenez, husband of Yasira Williams, will be joining his family here at Family Place Shelter upon his release. The family is currently placed in unit 284-3L Oak Street, Holyoke, MA.  They entered this program on 8/16/05 in an effort to resolve their homeless situation.  The program is designed to assist families in obtaining all necessary services so as to allow them to gain a level of self-sufficiency and to obtain safe, permanent housing.

If you have any questions you may contact me at 413-536-2787.

Thank you,

Karen Giard
Program Director

*To MR. Peter Parker*



**Baystate**
**Medical Center**
*A Member of Baystate Health System*
Springfield, Massachusetts 01199
413-794-0000August 29, 2005

To Whom It May Concern:

I am writing in regards to Yasira Williams and her family. Yasira is a single mother with multiple stressors and an advanced pregnancy. She is exhausted and fatigued. In her own home, Yasira would have family and friends staying over and staying late to help with the care of her children. Yasira understands there are rules in the transitional living program. However, she clearly needs more assistance at the present time. It would be our recommendation that Yasira have a family/friend stay late after 8pm and stay over to help with bedtime and acre of the children. Yasira is a person of scrupulous morals. She would not associate with anyone abusing substances or placing the program at risk. She is clearly exhausted, used to the help of her husband, and needs assistance from family/friends to deal with the final weeks of her pregnancy and postpartum recovery. This should be a period of six weeks.

It is also recommended that the children need to stay with family and friends overnight until Yasira gives birth and is recovered from the delivery and postpartum issues.

Thank you for supporting Yaria through her pregnancy and postpartum recovery.

Sincerely,

Catherine Smith, LICSW
Catherine Smith, LICSW
Baystate Medical Center

*The Western Campus of Tufts University School of Medicine*



# Baystate
# Medical Center

*A Member of Baystate Health System*

Springfield, Massachusetts 01199
413-794-September 21, 2005

Dear Attorney Peter Parker,

    I am writing to you in regards to Jose Jimenez DOB 5/19/1975.  I was informed by Yasira Williams, Mr. Jimenez's wife that you are currently representing him in regards to legal issues.

    I know Yasira Williams through my role as a Social Worker at Baystate Medical Center. Mrs. Williams gave birth to a baby boy on 9/5/2005. Mrs. Williams has kept in contact with me both prenatally and post partum. Yasira currently struggles with Post Partum Depression. She has long voiced her distress over the loss of her husband who contributed to the family by not only being a provider, but also partaking in child care and household tasks. In addition, his children miss him, do not understand why he is not home. Yasira has had to fulfill both parental roles.  His absence has been huge to this family unit.

    I do not know the legal charges pending against Mr. Jimenez. I just have been made very aware by his wife and children as to his importance in their lives.

    Please feel free to contact me if you have any further questions. I can be reached at 413-794-8493.

Sincerely,

*Catherine Smith, LICSW*

Catherine Smith, LICSW
Baystate Health Systems
Wesson Women's Clinic

SPRINGFIELD PARKING



For Springfield Parking Authority

July 7, 2005

Dear Peter Parker:

This letter is to inform you of Propark's willingness to provide a position for Jose Jimenez upon his release. Thank you and call if you have any questions. (413) 733-1789

Yasir Osman
Regional Manager

بــــــم الله الرحمن الرحــــيم

From:       Chaplain Abdullah Abdul-Rahim

Reference:   Jose Jimenez

To Whom It May Concern:

Jose has been an active member of our community here in the Greater Springfield
Area now for about 7 year. He is a bright and hard working young man. He and his
family attended many of the community activities on a regular basis.   Jose has been
a good husband, father and a good addition to the brotherhood in this area. His
family has suffered much since his incarceration and would benefit a great deal if he
is returned to them.

I pray whatever consideration that may be afforded in order for him to return to his
family will be given. Our prayers are with him and you in this matter and all that is
good.

Respectfully,

Chaplain Abdullah Abdul-Rahim