UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10058-RGS |
| | ) | |
| JOSE JIMENEZ | ) | |

**DEFENDANT'S FIRST MOTION IN LIMINE**

Defendant Jose Jimenez hereby moves for an order precluding the government from offering at trial the following evidence.  The government has charged Mr. Jimenez with passport fraud, social security number fraud and aggravated identity theft in an indictment of limited scope, both in terms of alleged criminal activity and time frame, which it can present to the jury in a focused and straightforward manner.  Unfortunately, the government has no intention of trying a clean and focused case.  Instead, it intends to offer extensive evidence that is relevant to no element of any charge in the indictment – evidence that unnecessarily would create the whiff of a connection between Mr. Jimenez, a practicing Muslim, and societal fears of terrorism.

The court should exclude the following evidence because it is inadmissible under Federal Rules of Evidence 401, 402, 403 and/or 404.  As grounds for this motion, Mr. Jimenez states as follows.

**The Indictment**

The government's theory of the case is that Mr. Jimenez obtained a birth certificate in the name of Michael Ian Figueroa and a duplicate social security card bearing the number issued to Michael Ian Figueroa, who had long been deceased.  The

government will allege that Mr. Jimenez then represented himself to be Figueroa and petitioned a state court to change his name from Figueroa to Barry Abraham.

Once the court approved that name change, the government contends that Mr. Jimenez, as Barry Abraham, obtained a duplicate social security card bearing Abraham's name and Figueroa's number, a Massachusetts driver's license and a United States Passport, all in Abraham's name.

The government further will seek to prove that Mr. Jimenez obtained Verizon telephone service in the name of David Davison, and provided Verizon with a social security number issued to Davison, who had long been deceased.

From these allegations, the government has fashioned a ten-count indictment. Count One charges Mr. Jimenez with making false statements in a passport application for the purpose of securing a passport for his own use, in violation of 18 U.S.C. § 1542. The alleged date of offense is November 4, 2004.

Counts Two through Six charge Mr. Jimenez with falsely representing a social security number to be the number assigned to him for the purpose of obtaining something of value, and with intent to deceive, in violation of 42 U.S.C. § 408(a)(7)(B). Four counts allege that Mr. Jimenez falsely represented that the number issued to Figueroa was Barry Abraham's for the purpose of obtaining a Massachusetts driver's license and a United States passport, and for opening two bank accounts. *See* Counts 2 through 5. Count Six alleges that Mr. Jimenez presented Davison's social security number to obtain telephone service with Verizon. The earliest of these offenses allegedly was February 10, 2003 and the latest was November 4, 2004.

Count Seven charges Mr. Jimenez with furnishing false information to the Social Security Administration in order to obtain a social security card bearing Abraham's name and Figueroa's number, in violation of 42 U.S.C. § 408(a)(6). The alleged date of offense is January 7, 2003.

Count Eight charges Mr. Jimenez with possession of false identification documents – the Figueroa birth certificate and the Abraham driver's license – with intent to defraud the United States to issue a passport, in violation of 18 U.S.C. 1028(a)(4). The date of this offense is November 4, 2004.

Finally, Counts Nine and Ten charge Mr. Jimenez with possession of another person's means of identification in relation to another felony, in violation of 18 U.S.C. § 1028A(c). Count Nine is based on allegations that on August 30, 2004, Mr. Jimenez possessed Davison's name and social security number in relation to his alleged efforts to obtain Verizon telephone service. Count Ten is based on allegations that on November 4, 2004, Mr. Jimenez possessed Figueroa's means of identification in connection with his efforts to obtain a social security card and passport in Abraham's name.

### Evidence The Government Is Expected To Offer

The government has obtained and presumably will offer at trial the following evidence:

>Barry Abraham Massachusetts driver's license seized from Mr. Jimenez on arrest;

>Barry Abraham US passport seized from apartment;

>Barry Abraham social security card, seized from apartment;

>Michael Ian Figueroa birth certificate seized from apartment;

> Hampton Probate Court records approving name change from Michael Ian Figueroa to Barry Abraham seized from apartment;
>
> Verizon telephone bills in Davison's name seized from apartment;
>
> Applications to relevant entities for replacement social security cards, driver's license, passport and bank accounts; and
>
> Post-arrest statement of Mr. Jimenez that his true name is Jose Jimenez, not Barry Abraham.

The flow of the evidence the government is expected to offer is as follows. The means of identification found at the apartment or on Mr. Jimenez at the time of his arrest – the Hampden County Probate Court records, the Figueroa birth certificate and the Abraham social security card and driver's license – were presented as means of identification along with the written social security card, driver's license and passport applications. In other words, each application indicates that it was accompanied by some or all of the supporting identification documents found at the apartment and/or on Mr. Jimenez' person. The end results of the various application processes – the Abraham social security card, driver's license and passport – were also found at the apartment or on Mr. Jimenez' person.

### Evidence the Court Should Exclude

Not content with this neatly-wrapped, concise and focused presentation of evidence to support its theory of its case against Mr. Jimenez, the government has informed Mr. Jimenez that it intends to offer a mountain of additional evidence. None of that evidence has any "tendency to make the existence of any fact of consequence … more or less probable," all of it is inadmissible under Rule 401 for that reason. *See* Fed. R. Evid. 401 and 402. Even if such evidence had minimal probative value, the court should still exclude it because probativeness "is substantially outweighed by the danger

of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." *See* Fed. R. Evid. 403.  Finally, much of the evidence is inadmissible character evidence and/or evidence of other crimes, wrongs or acts that is inadmissible under Rule 404 and 403.  For all of these reasons, the court should preclude the government from offering at trial the following evidence.

    1. **Inflammatory and Irrelevant Computer Disk Contents**

> **Anarchist Cookbook 2000**
> **Ebay Secrets/Internet Spy Toolkit**
> **Confidential Info On Anyone**
> **Credit**

The proposed evidence with the biggest potential for igniting prejudice and anti-Muslim/anti-terrorist sentiment is the contents of outdated computer files stored on compact disks locked away in an off-site storage locker allegedly belonging to Mr. Jimenez.  Even though the alleged events underlying the charges in this case purportedly occurred on six discreet dates from January 7, 2003 to November 4, 2004, the government seeks to offer a 218-page file from the disk entitled "Anarchist Cookbook 2000" which, the government contends, contains information on assuming the identity of a deceased person, committing identity theft and other fraud activities and making bombs.

The court should exclude this file.  It has no probative value whatsoever. None of the charges against Mr. Jimenez require the government to prove that he obtained biographical information, knew how to do that, stole the identity of a person or, of course, make bombs.  Passport fraud requires proof that Mr. Jimenez made false statements in a passport application.  Similarly, social security fraud requires proof that

5

Mr. Jimenez represented as his own numbers that he knew were not his own.  Providing false information to the Social Security Administration also requires only proof that Mr. Jimenez provided information he knew to be false.  The remaining counts – even the "Aggravated Identity Theft" counts – do not require proof of theft or proof of how Mr. Jimenez obtained means of identification.  They require proof only of *possession* of the means of identification of another person during and in relation to passport or social security fraud.  *See* Counts 8-10 and 18 U.S.C. §§ 1028 and 1028A.

The only purpose admitting the Anarchist Cookbook would serve would be the forbidden purposes of impugning Mr. Jimenez's character, unfairly prejudicing him, confusing the jury and wasting time.  The same is true for each of the other computer files the government seeks to offer – the folders entitled Ebay Secrets/Internet Spy Toolkit, Confidential Info On Anyone and Credit.

To the extent the government were to assert that such evidence goes to motive, opportunity, intent, preparation, knowledge or absence of mistake, the court should reject the proffered evidence as stale, not probative on any of those issues, unduly prejudicial and cumulative.  What better evidence could the government have of opportunity, intent, preparation, knowledge and absence of mistake than the paper trail found at the apartment and on Mr. Jimenez' person – starting with the Michael Ian Figueroa birth certificate, progressing to obtaining the duplicate Figueroa social security card and the name change from Figueroa to Abraham in probate court and culminating with obtaining the Abraham social security card, driver's license and US Passport?  Does the government really think Mr. Jimenez' defense is that it was all a colossal and

coincidental accident that magically worked to his benefit?  One day he awoke, grabbed his driver's license and keys and was surprised to learn that he was Barry Abraham?

### 2. High School Transcripts

The government seeks to offer 40 high school and college transcripts of persons other than Mr. Jimenez.  None of the transcripts are in the names of Figueroa, Abraham or Davison.  They date from the 1996 at the earliest to February 5, 2000 at the latest – all many years before the January, 2003 to November, 2004 dates of the alleged offenses.  The transcripts have no tendency whatsoever to make a fact of consequence more probable.

More importantly, the government represented at Mr. Jimenez' detention hearing that the transcripts were in sealed envelopes when they were seized pursuant to a search warrant from the apartment.  The government subsequently opened each envelope without obtaining a separate warrant.  By contrast, the government did not examine the data on the compact disks it seized pursuant to a warrant to search the storage container until it applied for and obtained a separate search warrant to access the contents of the disks.  The court should exclude the transcripts for the additional reason that the government opened and searched without a warrant the sealed envelopes containing them.

### 3. Handwritten Notes Re: Credit History Services and Orange County Clerk

The government intends to offer two handwritten notes found at the apartment that contain information about various credit reporting agencies and the clerk for Orange County.  The notes are undated and unrelated to any of the allegations in this case and do not appear to be connected in any way to any other piece of evidence.

For the reasons set forth in Section 1 above, whether Mr. Jimenez knew how to obtain identity information, knew where to look for it or complied reference material that would help him do so has no probative value as to any fact of consequence the government is required to prove. Even if this evidence were minimally probative, the court still should exclude it because its relevance is substantially outweighed by the danger of unfair prejudice, confusion of the issues, danger of misleading the jury, or by considerations of undue delay and waste of time.

4. **Handwritten Lists and Charts of Biographical Data Of Multiple Individuals**

Pursuant to search warrants executed at the apartment and the storage locker, investigators seized two handwritten lists containing the names and certain biographical data of a number of individuals, one of who was David Davison. The government intends to offer the lists in their entirety accompanied by a type-written chart prepared by an agent containing the same information. The notes are undated and, except for the name David Davison and corresponding biographical data on one of the lists, they are unrelated to any of the allegations in this case and do not appear to be connected in any way to any other piece of evidence.

For the reasons set forth in Sections 1 and 3 above, whether Mr. Jimenez knew how to obtain identity information or had obtained and compiled such information has no probative value as to any fact of consequence the government is required to prove. Even if this evidence were minimally probative, the court still should exclude it because its relevance is substantially outweighed by the danger of unfair prejudice, confusion of the issues, danger of misleading the jury, or by considerations of undue delay and waste of time.

5.  **Documents Relating To Jared Figueroa**

Investigators seized from the apartment correspondence with the Oregon Department of Human Services regarding Jared Figueroa and seized from the storage locker a vital check receipt for a death certificate in that name and a death certificate itself.  None of the charges brought against Mr. Jimenez are based on the Jared Figueroa material seized by investigators.  This material is unrelated to any of the allegations in this case and its admission at trial would not be probative in the least of any fact of consequence.  It constitutes inadmissible propensity evidence and should be excluded

### Conclusion

For all of the foregoing reasons, each of the items of evidence identified above are inadmissible under Fed. R. Evid. 401, 402 403 and 404.  The court should enter an order precluding the government from offering them at trial.

JOSE JIMENEZ
 By his attorney,

/s/ *E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
One Commercial Wharf North
Second Floor
Boston, MA  02110
(617) 742-9099

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 1, 2006.

/s/ *E. Peter Parker*
E. Peter Parker

9