UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA  )
  )
     v.  )        Criminal No. 05-10058-RGS
  )
JOSE JIMENEZ  )

**DEFENDANT'S MOTION TO DISMISS
OR TRANSFER FOR IMPROPER VENUE**

Defendant Jose Jimenez hereby moves that the court dismiss the indictment because venue is improper in the Eastern Division of this district. No part of any of the offenses charged in the indictment occurred in Boston. All of the offenses charged allegedly were committed in and around Springfield. Accordingly, venue properly lies in the Western Division. The court should dismiss the indictment or, in the alternative, transfer this case to the Western Division. As grounds for this motion, Mr. Jimenez states as follows.

**Argument**

**Venue Is Improper In the Eastern Division**

The court should dismiss the indictment or transfer this case to the Western Division because the government cannot carry its burden of demonstrating that venue is proper in Boston. *See United States v. Salinas*, 373 F.3d 161, 163 (1st Cir. 2004) (when the government's choice of venue is challenged, "the government must prove by a preponderance of the evidence that venue is proper as to each individual count"). The government improperly filed this case in this division after misleadingly indicating on the cover sheet that accompanied the indictment that the charged offenses occurred in

Springfield and Boston. *See* cover sheet to indictment. That is wrong as a matter of law. No part of any offense took place in Boston.

It is well-settled that the proper place for venue in a criminal case charging passport fraud in violation of 18 U.S.C. § 1542 is the place where the allegedly fraudulent statements were made. *Salinas*, 373 F.3d at 165. In *Salinas*, the First Circuit Court of Appeals reversed a conviction where the indictment was brought not where the defendant made false statements to secure a passport, but in a different location where the passport application was processed. *Id*. at 162-63. The court held that the offense was complete once the defendant made a false statement with intent to secure the issuance of a passport and that venue lied where the statement was made. *Id*. at 165 (reversing conviction because defendant made false statements in Eastern District of New York and was prosecuted in the District of New Hampshire).

The District of Massachusetts is a single judicial district with three separate divisions. *See* Local Rule 40.1(C). Governing Local Rules that require that this case be brought in the Western Division; criminal cases "shall be assigned to that division in which the most significant criminal conduct related to the alleged violations occurred within the District of Massachusetts. All documents in each criminal case shall be filed in the clerk's office administering cases for the division to which that case is assigned." Local Rule 40.1(E). That division is the Western Division where, as a matter of law, **all** alleged criminal conduct occurred. The government violated the provisions of this rule by filing this case in the Eastern Division and disregarded the law – and misled the court – by indicating on the cover sheet to the indictment that the conduct took place in Springfield and Boston. The court should not tolerate government forum shopping

within the district in flagrant violation of the Local Rules and well-settled, unambiguous law.  The court should dismiss the indictment

Should the court decline to dismiss the indictment, it should transfer the case to the Western Division.  The Local Rules expressly provide for transfer of a criminal case where venue is improper in the division chosen by the government: "[a]ny case may be transferred from one division to another division on motion of any party for good cause shown or sua sponte for good cause by the judge to whom the case is assigned."  Local Rule 40.1(F).  Good cause is present in abundance here.  Transfer would discourage the government from disregarding controlling precedent and the plain meaning of the Local Rules.  It would promote governmental respect for the rule of law and the rules of procedure.

Transfer would also strip the government of whatever benefit it thought it was obtaining by misleading the court that some part of the charged criminal conduct took place in Boston and filing the case in the Eastern Division.  The court can infer that the government consciously chose to file this case in Boston because it is dissatisfied with and openly critical of the sentencing practices of the only judge sitting in the Western Division, Judge Ponsor.  Assistant United States Attorney Todd E. Newhouse reportedly recently expressed the frustration of the entire federal law enforcement community over the perceived high number of below-guideline sentences imposed by Judge Ponsor.  *See* attached article from "The Republican," January 29, 2006.  Newhouse reportedly told Ponsor at the sentencing in the matter of *United States v. Henry*, Criminal No. 03-30043-MAP, that "[t]he law enforcement community in general has to look very closely at what you do in the next 10 minutes. … The whole city is watching."  The Republican,

attached hereto. Judge Ponsor imposed a sentence in the *Henry* case below the applicable

guideline range. *Id*.; Judgment and Conviction in *Henry*, Docket No. 92.

Finally, transfer would promote important policies underlying constitutional and

rule-bound principles requiring that cases be brought in places where the criminal

conduct occurred. The *Salinas* court described such principles as "a safety net, which

ensures that a criminal defendant cannot be tried in a distant, remote, or unfriendly forum

solely at the prosecutor's whim. Seen in this light, it is readily apparent that venue

requirements promote both fairness and public confidence in the criminal justice system."

373 F.3d at 164 (footnote omitted). Even though the *Salinas* court was dealing with

constitutional provisions and rules requiring that a federal criminal case be brought in the

district where the criminal conduct occurred, the same principles underlying those

provisions and rules are furthered by requiring the government to bring a case in the

appropriate division within a district.

### Conclusion

If venue is improper for a single count in a criminal indictment, it does not matter

that venue may be appropriate for other counts. *See Salinas*, 373 F.3d at 163-64 ("[t]he

fact that venue in the District of New Hampshire may have been proper for either or both

of the other two counts lodged against the defendant has no bearing on the propriety of

venue vis-à-vis the passport fraud count. The criminal law does not recognize the

concept of supplemental venue"). For all of the foregoing reasons, venue is improper in

the Eastern Division of this district.  The court should dismiss the indictment or transfer

this case to the Western Division.


JOSE JIMENEZ
 By his attorney,

/s/*E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
One Commercial Wharf North
Second Floor
Boston, MA  02110
(617) 742-9099

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 6, 2006.

/s/ *E. Peter Parker*
E. Peter Parker

# Judge says he follows are tough

Sunday, January 29, 2006
**By BUFFY SPENCER**
**bspencer@repub.com**

SPRINGFIELD - A federal prosecutor yesterday told U.S. District Court Judge Michael A. Ponsor that he and other members of the federal law enforcement community are frustrated with the number of times in the last year Ponsor has given sentences below federal sentencing guidelines.

Assistant U.S. Attorney Todd E. Newhouse told Ponsor he was making his comments with respect, but frustration, as he asked Ponsor to sentence Lee Henry, 38, of Springfield to 30 years to life for selling heroin and cocaine.

Ponsor ultimately sentenced Henry to 12 years for those crimes, committed in 2003, and an additional four years for two other crimes.

Newhouse said that since a U.S. Supreme Court decision last year allowed judges more flexibility in sentencing in some cases, "downward departures and deviations in this courtroom have become the norm." He said that there is a reason to keep sentences relatively consistent and not deviate from sentencing guidelines.

Ponsor said he did not keep a "scorecard" of his sentencing decisions but disputed Newhouse's representation of his sentencing practices.

Ponsor said he understood that lawyers might get frustrated with his sentences, but said, "I hit people hard. I hit people really hard."

He said a 10-year sentence is a life-altering sentence. Ponsor said before flexibility was allowed, "we got so used to throwing around 30- or 40-year sentences" that a 10-year sentence may sound low to some people.

Henry had been found guilty after a trial of two counts of cocaine distribution and one count of possession with intent to distribute heroin. Despite defense lawyer Linda J. Thompson's arguments, Ponsor determined that Henry's previous two drug convictions in Connecticut put him in the career offender category, which led to the guideline range of 30 years to life.

But he decided to depart from the guideline range, using reasons he said existed before the U.S. Supreme Court decision, including the defense contention that Henry had diminished capacity from a serious childhood trauma.

Henry had pleaded guilty to the other two offenses, contempt of court and distribution of heroin. Newhouse said that within 48 hours of being released on bond after arraignment on the drug charges in the 2003 cases, Henry was found with 60 bags of heroin in his car.

Henry told Ponsor he had to return the heroin to the person who fronted it to him, because in the drug world you either have to give back the drugs or sell them and give the person money.

6

Ponsor told Henry that it puts the court in a terrible position when someone violates the conditions of release.

Newhouse said of Henry's explanation, "That's laughable, judge." He said Henry's action "screams for a lengthy sentence."

"The law enforcement community in general has to look very closely at what you do in the next 10 minutes," Newhouse said, in arguing for lengthy additions in prison time for the two other offenses. "The whole city is watching. Is he going to get three for one?" Newhouse said, saying sentences should not be concurrent with the 12-year sentence.

He said law enforcement personnel can't spend time and resources with cases such as Henry's contempt case if defendants are not sentenced harshly. He asked for 10 added years.

Ponsor then gave Henry a 14-year sentence on the heroin distribution, concurrent with the 12-year sentence, which adds two years to the 12-year sentence. He then added two additional years on the contempt. "It's a terribly heavy sentence," Ponsor said.