UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                          )
        v.            )     CRIMINAL NO. 05-10058-RGS
                          )
JOSE JIMENEZ a/k/a BARRY    )
ABRAHAM a/k/a MICHAEL IAN   )
FIGUEROA a/k/a DAVID       )
DAVISON,                )
                          )
      Defendant.      )

**<u>GOVERNMENT'S TRIAL BRIEF</u>**

The United States of America, by Michael J. Sullivan, United States Attorney, and Assistant United States Attorneys B. Stephanie Siegmann and Jeffrey Auerhahn, hereby submits this trial brief addressing certain issues that may arise during the trial of this case and opposing the Defendant's Motions in Limine.

**I.    <u>INDICTMENT</u>**

The defendant is charged in a ten count indictment with: (1) willfully and knowingly making false statements in an application for a U.S. passport, in violation of 18 U.S.C. § 1542 (Count One); (2) willfully and knowingly using false social security numbers, in violation of 42 U.S.C. § 408(a)(7)(B) (Counts Two-Six); (3) willfully and knowingly furnishing false information to the Commissioner of Social Security to obtain a social security number card of another, in violation of 42 U.S.C. § 408(a)(6) (Count Seven); (4) possessing false identification documents with

the intent to defraud the United States, in violation of 18 U.S.C. §1028(a)(4) (Count Eight); and (5) committing aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) by using the means of identification of two persons to commit passport and social security fraud (Counts Nine and Ten).

II.  **SUMMARY OF THE GOVERNMENT'S CASE**

In October 2002, Jose Jimenez a/k/a Barry Abraham a/k/a Michael Ian Figueroa a/k/a David Davison (the "defendant") illegally obtained a Florida birth certificate in the name of Michael Ian Figueroa and the social security number assigned to this person, ***-**-6482, shortly after obtaining compact disks containing information about how to create a false identity in a document entitled "Anarchist Cookbook 2000."[1]  Michael Figueroa was killed on July 27, 1978 when he was four years old.  The defendant's date of birth and the date of birth of Michael Ian Figueroa are 20 months apart; Figueroa was born September 13, 1973 and the defendant was born May 19, 1975.

On October 31, 2002, the defendant, falsely using the Figueroa identity, posed as Figueroa and filed a request for a name change with the Hampden County Massachusetts Probate and Family Court.  In this court filing, the defendant requested to change his fraudulently obtained identity of Michael Ian Figueroa

_____

[1]During a search of defendant's storage unit conducted on February 18, 2005, these disks were found in compact disk mailers addressed to Jose Jimenez.

to another false name, Barry Abraham.  The defendant stated that the reason for the name change request was religious.  On December 31, 2002, the Court granted the defendant's name change request.[2]

On January 7, 2003, the defendant, again falsely using the Figueroa identity, applied for a replacement social security number card for the number issued to Figueroa.  On this application (SS-5 form), the defendant fraudulently represented himself as Figueroa and declared that the number ***-**-6482 was assigned to him in violation of 42 U.S.C. §408(a)(6).  He also requested that the new social security card with Figueroa's number be issued to him under the name Barry Abraham.  On February 10, 2003, using Figueroa's social security number, the defendant applied for and obtained a Massachusetts Driver's license under the name Barry Abraham in violation of 42 U.S.C. §408(a)(7)(B).[3]  Subsequently, the defendant also falsely used Figueroa's social security number on various applications, including applications to open bank accounts at Citizens Bank and Banknorth, in violation of 42 U.S.C. §408(a)(7)(B).[4]

---

[2]A certified copy of this change of name request was seized during the search of the defendant's apartment described in more detail below.

[3]The new social security number card issued in the name Barry Abraham was also seized during the search of the defendant's apartment.

3

On November 4, 2004, the defendant applied for a U.S. passport under the name Barry Abraham.  On this passport application, the defendant falsely represented himself to be Barry Abraham formerly known as Michael Ian Figueroa.  In violation of 18 U.S.C. §§1542 and 1028A(a)(1) and 42 U.S.C. §408(a)(7)(B), the defendant also falsely stated that: his social security number was ***-**-6482; his place of birth Orlando, Florida; and his date of birth was **** ** 1973.  The defendant executed this passport application using the name Barry Abraham.[5]

In support of his application, the defendant provided Chris Morneau, a postal employee at the United States Post Office at Springfield, Massachusetts, a Massachusetts Driver's License in the name Barry Abraham, a Florida birth certificate in the name of Michael Ian Figueroa, and the name change record from Hampden County Probate and Family Court indicating that a name change had been requested and granted allowing Michael Figueroa to use the name Barry Abraham.  On November 9, 2004, in response to the application submitted by the defendant, the United States Department of State Passport Agency at Boston issued U.S. passport, number 104687479, to the defendant under his fraudulently obtained identity of Barry Abraham.

---

[5]The original U.S. Passport, containing the defendant's photograph, Abraham's name and Michael Figueroa's date of birth was found during the search of the defendant's apartment.

4

The defendant also falsely used the identity of another individual who also is deceased, David Davison, to initiate telephone service at his Springfield residence.  To open up an account with Verizon, in August 2004, the defendant provided Davison's name and social security number to the Verizon service representative in violation of 42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. 1028A(a)(1).[6]

On January 11, 2005, during a motor vehicle stop, the defendant was arrested by the Springfield Police Department pursuant to a state arrest warrant for false application for a motor vehicle license and false application for a motor vehicle registration.  Prior to being placed under arrest, the defendant produced a Massachusetts driver's license in the name of Barry Abraham as proof of his identification to Officer John Taylor, Springfield Police Department.  After being arrested and provided his Miranda rights, the defendant admitted his real name was Jose Jimenez and that he lived at 89 Longhill Street, Apt. 1C, Springfield, Massachusetts.

In conjunction with this arrest, on January 11, 2005, a state search warrant was executed on the defendant's residence, 89 Longhill Street, Apt. 1C, Springfield, Massachusetts.  During the search of the defendant's residence, volumes of documents

---

[6]Verizon telephone bills addressed to David Davison were found during the search of the defendant's apartment among other correspondence addressed to Barry Abraham.

relating to the use or creation of false identifications were found, including: (1) U.S. Passport in the name of Barry Abraham (the same passport issued pursuant to the fraudulent passport application described above); (2) social security number card in the name of Barry Abraham; (3) original birth certificate in the name of Michael Ian Figueroa; (4) court documents evidencing the defendant's scheme to pose as Michael Ian Figueroa and obtain court permission to use the name of Barry Abraham with Figueroa's biographical identifiers (date of birth, social security number, etc.); (5) mail and bills in the name of David Davison, Barry Abraham, and various businesses; and (6) a handwritten document containing list of 27 names and under each name, a list of numbers that have been determined to represent the person's date of birth, place of birth, and social security number (the name David Davison and his biographical information appears on this list); (7) handwritten notes containing the names of credit history services and the Orange County Clerk and their contact information; and (8) approximately 40 official transcripts from colleges and high schools in the names of different people.

On February 18, 2005, a storage unit rented by the defendant at Handy Self Storage in Springfield, Massachusetts was searched pursuant to federal search warrant. During this search, law enforcement officers and special agents found credit cards and identification cards in the name Jose Jimenez and delinquent

bills in the names Jose Jimenez and Barry Abraham.  They also found more handwritten lists of names with numbers believed to represent identifiers, including dates of birth and social security numbers.  Additionally, during this search, computer disks were seized from the defendant's storage unit containing computer files on how to create false identities.

On two compact disks both bearing the label "Powerseller Information CD", which were each found within compact disk mailers addressed to Jose Jimenez, one bearing a postmark date of October 9, 2002 and the other bearing a postmark date of October 15, 2002: (a) a document entitled "ANARCHIST COOKBOOK 2000" (file name "acb2000.htm"), several sections of which concern identity theft and how to create false identities, was found in a folder named "FORBIDDEN KNOWLEDGE"; (b) two documents entitled Internet Spy Toolkit were found in folder named "EBAY SECRETS", subfolder spy1, which included links to websites that allow users to search for biographical information of U.S. persons and vital statistics (file name "STATIST.htm") and social security administration's death index (file name "SSI.htm"); (c) a document entitled "Tips for Locating Persons" (file named "Tips.html") was located in folder named "CONFIDENTIAL INFO ON ANYONE"; and (d) documents entitled "ALTERNATIVE METHOD FOR ESTABLISHING A NEW CREDIT FILE" (file name "Credit15.html") and "RANGES OF SOCIAL SECURITY NUMBERS PER STATE" (file name "Credit8.html") were located in

folder named "CREDIT".

### III. LEGAL ISSUES

A.   Admissibility of Documents and Materials Seized during
     Searches of Defendant's Residence and Storage Unit

The government will seek to introduce at trial certain
writings and other paper and electronic documents seized from the
defendant's residence or storage unit, which can be grouped into
seven categories: (1) defendant's handwritten lists containing
names, numbers, and locations; (2) charts interpreting these
lists of names, strings of numbers, and places; (3) defendant's
handwritten lists containing contact information for credit
history services and Orange County Clerk's Office in California
(the place of death of Michael Ian Figueroa); (4) requests for
birth and death certificates of Jared Figueroa; (5) computer
documents; (6) high school and college transcripts of 40
different individuals; (7) delinquent bills in the names of Jose
Jimenez and Barry Abraham; and (8) Capital One bills and
correspondence in the name Barry Abraham.  The defendant has
sought to exclude all of these categories except the delinquent
bills and Capital One bills and correspondence on the grounds
that this evidence is inadmissible under Federal Rules of
Evidence 401-404.

As described below, the government submits that defendant's
writings and documents, identified as categories 1-6 above are
admissible as circumstantial evidence that is intrinsic to the

8

crimes charged or under Federal Rule of Evidence 404(b) to prove the defendant's unlawful intent, preparation, plan, pattern, motive, and knowledge.

(1)  Handwritten lists seized from Defendant's Residence and Storage Unit

The defendant's writings (handwritten lists of biographical information of 39 people including David Davison and Jared Figueroa and notes bearing contact information for credit history services and Orange County Clerk) are admissible as evidence that are inextricably intertwined with the charged offenses.

Both lists, the list of 27 names found at the defendant's residence and the list of 12 names found at the defendant's storage unit, contain names and then directly beneath the name a series of numbers.  For instance, on the first list containing 27 names, the following appears on the top of the second page of the list:

```
DAVID ANTHONY DAVISON
073075552437257
DC
041978
SD
```

Special Agent Joseph Desantis, Social Security Social Security Administration, Office of the Inspector General reviewed both lists and deciphered what the lists of numbers represented. Using social security databases, he determined that the horizontal string of 15 numbers directly beneath the name represented each individual's six digit date of birth followed by

9

a nine digit social security number.  Using the above example,
according to the defendant's list, David Davison's date of birth
was ████████ and social security number was ████████.  Special
Agent Desantis determined that this information was in fact
correct.  Next Special Agent Desantis determined that the
location identified underneath the date of birth and social
security number, was the individual's place of birth.  Again
using our example, Davison was born in the District of Colombia.
The next line beneath the place of birth, containing a horizontal
list of six digits represented the date of death and underneath
that series of numbers was the place of death.  The government
will introduce by stipulation the death certificate of David
Davison that establishes that, as noted on defendant's list,
Davison died in San Diego on 04/19/78.

      To simplify his analysis for presentation to a jury, Special
Agent Desantis prepared a chart identifying what each number and
location under each name represented and checked the accuracy of
all the information on the defendant's lists.  The government
will seek to introduce those lists to aid the jury in reviewing
the defendant's lists of names, numbers, and locations.

      Also found on the first list was the name, date of birth,
social security number, place of birth, date of death, and place
of death of Jared Figueroa.  Based upon documents found at the
defendant's residence and storage unit, he also request this

individual's birth and death certificates.

In addition to the lists of names and biographical information, handwritten notes of the defendant were found that are directly relevant to the charged offenses. First, the government found notes regarding credit history services. On that same page of notes, the defendant wrote the words "Name" "DOD" and "Phone" directly above "Orange City Clerk." These words refer to a request for a death certificate. Michael Ian Figueroa's death certificate is on file with the Orange County Clerk's Office, Santa Ana, California. The second page of these notes bear the words "Michael Figueroa," and among other information, his date of birth and social security number. Immediately beneath Figueroa's biographical information, the notes state: "Apply for An ITIN Individual Taxpayer Identification Number."

Similarly, on another set of handwritten notes, the name "Orange County Clerk-Recorder", "Box 238, Santa Ana, CA 92702" and telephone number in California was found. Immediately above the name "Orange County Clerk-Recorder" is the following words/abbreviations:

                    Name
                    DOD
                    POD
                    Number of Copies
                    Name & Address to Mail
                    Phone

11

Clearly these notes relate to the defendant's request for the death certificate of Michael Ian Figueroa, the identity he stole and fraudulently used.

The defendant's notes evidencing his possession of, and plans to unlawfully use, identities and social security numbers of other persons, including David Davison, are inextricably intertwined with the charged offenses. United States v. Houle, 237 F.3d 71, 77-78 (1st Cir.)(evidence must be considered in light of proximity in time to charged acts and to resemblance to crimes charged), cert. denied, 532 U.S. 1074 (2001); United States v. Manning, 79 F.3d 212, 218 (1st Cir. 1996)(evidence intrinsic to the crimes for which Defendant is on trial is not governed by Fed. R. Evid. 404(b)). The defendant's possession of means of identification of deceased persons is part of the res gestae of the crime charged; it provides part of the full context of the crime and is so intimately connected to the crime that it is necessary to present the jury a complete statement of the facts. Evidence of a defendant's similar acts is admissible if it is part of the res gestae of the crime charged, such as when it provides part of the full context of the crime or is so intimately connected to the crime that it is necessary to complete the story of the crime.

With little analysis or discussion, the Defendant argues that the defendant's handwritten lists are unfairly prejudicial,

unrelated to any allegations in this case, and inadmissible. Defendant's handwritten writings include information relating to the defendants theft of the means of identification of Michael Ian Figueroa, the subject of nine of the ten counts of the Indictment.  Likewise, one of the handwritten lists of names, includes the name David Davison, the identity which is the subject of Count Nine.  The defendant's handwritten lists and notes are intrinsically intertwined with to how the defendant committed the charged offenses, or at a minimum, relevant to the defendant's knowledge, intent, pattern, and common scheme or plan.

The defendant's own written words are admissible under Federal Rule of Evidence 404(b) as "other crimes, wrongs, or acts" probative of the defendant's unlawful intent, knowledge, pattern, and common scheme or plan .  See United States v. Decicco, 370 F.3d 206, 212 (1st Cir. 2004) (in trial for arson and insurance fraud, evidence of prior fire in defendant's building was probative of common scheme or plan and admissible under Fed. R. Evid. 404(b)); United States v. Guyon, 27 F.3d 723, 729 (1st Cir. 1994)(in trial for bank fraud, held defendant's uncharged applications for higher education loans were probative of defendant's intent to defraud and admissible under Fed. R. Evid. 404(b)); see also United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996) (evidence of defendant's prior drug dealing

13

"highly probative of the knowledge and intent elements" of drug charge).

Evidence is admissible under Rule 404(b) if it satisfies a two-prong test. <u>United States v. Aquilar-Aranceta</u>, 58 F.3d 796, 798 (1st Cir. 1995) (First Circuit has adopted two-part test to determine admissibility of evidence offered under Rule 404(b)). First, the evidence must be offered to show something other than that the defendant acted in conformity with a bad character.  In other words, that the proffered evidence has some "special relevance" or "special" probative value independent of its tendency to show criminal propensity.  <u>United States v. Frankhauser</u>, 80 F.3d 641, 648 (1st Cir. 1996); <u>Guyon</u>, 27 F.3d at 728.  Prior bad acts may be "specially" relevant if they are probative of intent, preparation, knowledge, or absence of mistake.  <u>See, e.g.</u>, <u>Guyon</u>, 27 F.3d at 728.  Second, the probative value of the proffered evidence is not substantially outweighed by the danger of unfair prejudice.  <u>Frankhauser</u>, 80 F.3d at 648.

Rule 404(b) evidence is deemed to have special relevance if the evidence "would allow a juror to make at least one inference probative" of a material issue.  <u>United States v. Nickens</u>, 955 F.2d 112, 124-25 (1st Cir. 1993) (citations omitted).  Here, the defendant's notes regarding the theft of means of identification of other persons that he committed and planned to commit are

14

admissible because this evidence: (1) has "special relevance" in
establishing the defendant's common scheme or plan to commit
identity theft, unlawful intent in using Figueroa's and Davison's
biographical information, willfulness in committing the charged
offenses, and knowledge that the social security numbers he used
in fact were assigned to other persons, all elements the
government must prove beyond a reasonable doubt[7], and (2) its
probative value is not substantially outweighed by the risk of
undue prejudice.  <u>United States v. Hadfield</u>, 918 F.2d 987, 994
(1st Cir. 1990); <u>see Guyon</u>, 27 F.3d at 729 (uncharged loan
applications had "'special' relevance" in that they were
probative on issue of whether the defendant intended to defraud
various banks when he applied for charged loans); <u>Manning</u>, 79
F.3d at 217 (fact that defendant "had previously sold cocaine
makes it more likely both that he was aware of the contents of
the plastic bags in the briefcase and that he intended to

---

[7]Although the defense indicates that to prove passport fraud
and social security number fraud the government need only prove
that the defendant made false statements on a passport
application and used social security numbers not assigned to him,
the government is in fact required to prove several more
elements, including an unlawful intent.  For instance, as
indicated in the governments proposed jury instructions, to prove
passport fraud, the government must prove beyond a reasonable
doubt the following three elements:(1) that the defendant
willfully and knowingly made a false statement in an application
for a passport; (2) that he did so with the intent to induce and
secure the issuance of a passport under the authority of the
United States, for his own use; and (3) that he did so contrary
to the laws regulating the issuance of passports and the rules
prescribed pursuant to such laws.

distribute the two bags of cocaine"); <u>United States v. Carty</u>, 993
F.2d 1005, 1011 (1st Cir. 1993) (prior drug convictions had
"special relevance" to possible intent or plan to distribute).

>    (2)    Requests for Birth and Death Certificates of Jared
>           Figueroa

In the defendant's residence, a request for the birth
certificate of Jared Figueroa was found along with Oregon
Department of Human Service's denial of this request.  The name
"Jared Figueroa" and its biographical information also appeared
on the defendant's 27 person handwritten list, the same list that
bears the name and biographical information of David Davison.  In
the defendant's storage unit, Jared Figueroa's death certificate
was found in a federal express envelope addressed to Jose
Jimenez, 32 Lionel Benoit Road, #B, Springfield, MA 01190 (the
same address the defendant used in association with the Barry
Abraham identity).  A receipt for payment of that death
certificate was also found in the storage unit.  Like the
handwritten lists and notes described above, these documents
relating to Jared Figueroa are admissible under Rule 404(b) as
evidence of the defendant's unlawful intent in possessing the
means of identification of other persons, and his knowledge,
common scheme or plan to commit identity theft.  The fact that
the defendant possessed means of identification of several other
people and took steps to collect identification documents (i.e.,
birth certificates) of these persons, demonstrates that the

defendant acted with the intent to defraud, and that he acted
willfully and knowingly when he made false statements on a
passport application, and applications with the Social Security
Administration, the Massachusetts Registry of Motor Vehicles, and
banks.

> (3)  Approximately 40 Official High School and College
>      Transcripts of People Other than the Defendant seized
>      from Defendant's Residence.

   Approximately 40 official high school and college
transcripts of people other than the defendant were found at the
defendant's residence.  Some of these transcripts were opened and
some were sealed.  These transcripts again demonstrate the
defendant's unlawful intent, preparation, knowledge, common
scheme or plan, and motive in committing the charged offenses and
are admissible under Rule 404(b).


> (4)  Computer documents seized from computer disks found in
>      defendant's storage unit.

   The electronic documents seized from the defendant provide
evidence as to how the defendant obtained the knowledge, and
planned and prepared to commit identity theft, and are admissible
under Rule 404(b).  For example, in early October 2002, the
Defendant obtained via first class mail, electronic documents on
two compact disks, including the Anarchist Cookbook 2000, which
gave him the tools and ideas to steal the identity of Michael Ian

Figueroa.  The Anarchist Cookbook provides step by step
instructions on how to create a false identity using the
biographical information of a deceased person.  The Anarchist
Cookbook instructs readers to select the identity of a deceased
person born close in time to your own, who preferably died when
he was a child.  Within weeks of obtaining these electronic
documents, the defendant requested and obtained the birth
certificate of Michael Ian Figueroa and filed the name change
request with Hampden County Probate and Family Court.  One of the
other electronic documents obtained by the defendant is entitled
the Internet Spy Toolkit.  This document contains links to
websites containing vital statistic and social security
information.  Using these links, a person can, using the Social
Security Administration's Master Death Index, determine whether
the Social Security Administration is aware that a certain person
is deceased and that the number assigned to them is now dead or
invalid.  The social security numbers assigned to both Michael
Ian Figueroa and David Davison were not on the Social Security
Adminstration's death index because no one ever informed the
Social Security Administration that these individuals were
deceased.  Accordingly, these numbers remained valid for the
defendant to use to defraud the United States, Massachusetts, and
various creditors.

The other three computer documents the government will seek

18

to introduce, "Tips for Locating Persons", "Alternative Method
for Establishing A New Credit File", and "Ranges of Social
Security Numbers Per State" are also relevant to the defendants
knowledge, preparation, and plan to commit identity theft.

**No Unfair Prejudice**

The admission of all eight categories[8] of probative evidence
are not substantially outweighed by the danger of unfair
prejudice.[9]  The proffered evidence is highly probative and there
is minimal risk of unfair prejudice.  "The fact that a piece of
evidence hurts a party's chances does not mean it should
automatically be excluded, [or] there would be precious little

---

[8]The government will seek to introduce the defendant's
delinquent bills in the names Jose Jimenez and Barry Abraham
under Rule 404(b) to demonstrate his unlawful motive in using new
identities and means of identification of other persons.
Similarly, the government will seek to introduce Capitol One
bills and correspondence in the name Barry Abraham.  Like the
bank accounts he opened at Banknorth and Citizens, the defendant
opened an account with Capitol One using the means of
identification of Barry Abraham.  This evidence is admissible
under Rule 404(b) to establish his pattern of unlawful activity
and intent to defraud.  See Guyon, 27 F.3d at 729 (evidence of
uncharged loans, which were strikingly similar to charged loans,
permissibly demonstrated that defendant "was engaged in a
widespread scheme to fraudulently apply for a number of loans,
using the same pattern of activity in each instance, in order to
defraud various banks.")

[9]In balancing the probative value and risk of undue
prejudice of a defendant's prior bad acts, a district court
should bear in mind that Rule 404(b) is a rule of inclusion, not
exclusion.  Carty, 993 F.2d at 1011 (citations omitted) (emphasis
added).  Thus, the analysis under Rule 403 is not whether the
defendant is prejudiced by the admission of evidence of prior bad
acts, but whether the defendant suffers unfair prejudice.
Nickens, 955 F.2d at 125 (citations omitted) (emphasis added).

left in the way of probative evidence in any case." <u>Carty</u>, 993
F.2d at 1011 (quoting <u>Onujiogu v. United States</u>, 817 F.2d 3, 6
(1st Cir. 1987)).

The defendant argues that defendant's handwritten lists and
notes, computer documents, Jared Figueroa information, and high
school and college transcripts should be excluded based upon the
strength of the government's other evidence against the
defendant.  That is not one of the factors that the First Circuit
or other courts have considered in evaluating whether such 404(b)
evidence is admissible.  Accordingly, the government asks that
this Court not weigh the strength of potential other evidence,
especially when such evidence has not be stipulated to by the
defendant nor ruled admissible prior to trial.

Finally, the Court can minimize any potential danger of
unfair prejudice caused by the admission of this evidence by
issuing a limiting jury instruction regarding the proper
relevance of the evidence.  The First Circuit has approved the
use of such limiting instructions as an appropriate means of
protecting a defendant against the possibility that a jury might
draw improper conclusions from a defendant's prior bad acts.
<u>See</u>, <u>e.g.</u>, <u>United States v. Freeman</u>, 208 F.3d 332, 345 (1st Cir.
2000) ("'the potential for prejudice . . . can be satisfactorily
dispelled by appropriate curative instructions.'") (citation
omitted); <u>United States v. Garcia</u>, 983 F.2d 1160, 1173 (1st Cir.

20

1993)("district court handled the prior acts evidence with care,
providing the jury with a limiting instruction . . . and again
instructing the jury of the scope of prior acts evidence in his
final charge.").

B.    Reference to State Charges during Government's Case-in-Chief

        In the Defendant's Second Motion in Limine, the Defendant
has sought to preclude the government from referencing the state
charges underlying the defendant's arrest.  The sole reason for
this request is that jurors may speculate about why the federal
authorities decided to prosecute the defendant.  The government
will not be eliciting any testimony about why the defendant was
transferred to federal custody and the state charges were *nol
prossed*.  However, the government does intend to present
testimony about the circumstances surrounding the defendant's
arrest, the defendant's post-arrest statements, and the search of
the defendant's residence.  Such testimony is necessary to
demonstrate to the jury that the government was acting lawfully
and with a legitimate basis.

        In this age of suspicion of law enforcement, it would be
unfair and confusing to the jury to preclude the government from
identifying the reasons for the defendant's arrest and the search
of his residence.  If the defendant's motion was allowed, the
government would be unable to even mention that the arrest was
made pursuant to a valid arrest warrant and similarly, that the

search was conducted pursuant to a valid search warrant.  The jury would likely be mislead, if not confused, into thinking that law enforcement acted without any lawful authority or violated the defendant's civil liberties.

Furthermore, when the defendant was questioned about his identity and his address after being provided his Miranda rights, he initially provided a false name and address.  It was only after he was shown the arrest warrant and told that the authorities had a search warrant that he admitted his real name was Jose Jimenez and his address was 89 Longhill Ave., Apt. 1C, Springfield.  The arrest warrant and search warrant are therefore clearly relevant to the testimony regarding the defendant's post arrest statements, which the government seeks to introduce to establish the defendant's identity in an identity fraud prosecution.

Additionally, there is little risk of unfair prejudice arising from this testimony; although the government has brought a similar federal criminal charge in Count Two for using a false social security number when he applied for a Massachusetts Driver's license, for the most part, the state charges were minor compared to the federal charges eventually brought in this case.

C.   Use of Term "Joint Terrorism Task Force" in describing
     Witnesses Credentials

The government believes that a law enforcement officer's selection for appointment on the Federal Bureau of

Investigation's Joint Terrorism Task Force ("JTTF") and the training provided as a result of working on the JTTF is a legitimate factor for the consideration by the jury of a witness' credibility and experience.  In the interest of not confusing or misleading the jury, the government has decided not to solicit this credential type testimony from its witnesses at this trial. The government will instruct its witnesses not to mention on direct their experience on the JTTF when describing their experience, training, and responsibilities.

D.  Definition of "Another Person" Requested by Government in Jury Instructions

The Court has already ruled on the definition of "another person" as that term is used in 18 U.S.C. §1028A.  As this Court is well aware, it found that "another person" means another living or deceased person.  Accordingly, with respect to Counts Nine and Ten, as indicated in the Government's Proposed Jury Instruction No. 11, the government respectfully requests that this Court instruct the jury of this legal conclusion.

E.  Reference to Defendant's Religion

Although the government does not anticipate asking witnesses on direct about the defendant's religious beliefs, it is possible that the fact that the defendant is Muslim may be mentioned when answering other questions about the name change request form or the circumstances surrounding the search of the defendant's residence.  First, on the name change request form that was

completed by the defendant and used to obtain the Massachusetts Driver's License and Passport in the name Barry Abraham (and found at his residence), the defendant indicated that the reason for his name change request was "religious."  Second, if on cross-examination, defense counsel tries to insinuate that the officers were unprofessional or disrespectful during the defendant's arrest or search of the defendant's residence, the officers may describe the steps they took to address the concerns of searching an apartment with an adult Muslim female present and their response to the defendant's own concerns about his alleged wife.

**IV.  Stipulations**

The parties have agreed to the attached stipulation regarding the admissibility of the death certificates of Michael Ian Figueroa and David Davison.  Defense counsel has informed the undersigned counsel that the stipulation will signed by the Defendant on or before the date of trial.

The government may also seek to admit a similar death certificate of Jared Figueroa, also obtained from the State of California, which bears an original seal from the State of California and a certification and signature of the County Recorder that it is a true and exact reproduction of the death certificate on file, as a self-authenticated domestic public record under seal under Fed. R. Evid. 902(1).  The Defendant has

24

refused to stipulate to this death certificate on relevance and Rule 404(b) grounds.

**V.    Length of Trial**

The government anticipates that the trial will last 5 days.

**VI.   Request to Use Audiovisual/Electronic Equipment At Trial**

The government requests permission to use a document camera and LCD projector (commonly referred to as an "Elmo") to publish exhibits to the jury during the presentation of its case.  The government will also have some of its exhibits scanned and enlarged to allow the jury to more easily see critical information on the government's evidence.

**VII.  Request not to Sequester Government Agent Witnesses**

Due to the fact that this case was a joint investigation of several law enforcement agencies, the government requests that two agent witnesses not be sequestered and be allowed to sit in the courtroom, but not at counsel table, during the entire trial. Those agents are Special Agent Galen Nace of the Diplomatic Security Service, and Special Agent Joseph Desantis of the Social

Security Administration, Office of the Inspector General.

25

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:  <u>/s/ B. Stephanie Siegmann </u>
     B. STEPHANIE SIEGMANN
     JEFFREY AUERHAHN
     Assistant U.S. Attorneys


Dated: February 7, 2006




<u>Certificate of Service</u>

    I do hereby certify that a copy of the foregoing
government's trial brief was served upon Mr. Parker by electronic
notice on this 7th day of February 2006.

                    <u>/s/ B. Stephanie Siegmann</u>
                    B. Stephanie Siegmann
                    Assistant U.S. Attorney

26

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
          v.                  )     CRIMINAL NO. 05-10058-RGS
                              )
JOSE JIMENEZ a/k/a BARRY      )
ABRAHAM a/k/a MICHAEL IAN     )
FIGUEROA a/k/a DAVID          )
DAVISON,                      )
                              )
          Defendant.          )

<u>STIPULATION</u>

The United States of America, by Michael J. Sullivan, United States Attorney, and Assistant United States Attorneys B. Stephanie Siegmann and Jeffrey Auerhahn, and the Defendant Jose Jimenez and his attorney, E. Peter Parker, hereby agree that the jury may accept as proven fact that the Government's Exhibits (numbered 1-2) that purport to be the Death Certificates of (1) Michael Ian Figueroa and (2) David Davison (as amended) are in fact the death certificates of these individuals and the information contained in these certificates is true and accurate. The parties also agree that these exhibits are true and exact copies of the official death certificates on file with the State

of California.


Agreed to by:

MICHAEL J. SULLIVAN                JOSE JIMENEZ
United States Attorney



By: _____        _____
    B. STEPHANIE SIEGMANN          The Defendant
    JEFFREY AUERHAHN
    Assistant U.S. Attorneys


                                   Defendant's Counsel


                                   _____
                                   E. PETER PARKER, Esq.