UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA   )
                           )
          v.               )        Criminal No. 05-10058-RGS
                           )
JOSE JIMENEZ               )

**SENTENCING MEMORANDUM**

Defendant Jose Jimenez submits this sentencing memorandum to assist the court in determining the appropriate sentence. For the reasons set forth in detail below, the court should sentence Mr. Jimenez to a total term of incarceration of 25 months – one month to run concurrently on counts 1-7 followed by a 24-month sentence to run concurrently on counts 8 and 9. As grounds for this motion, Mr. Jimenez states as follows.

**Summary of Argument**

A 25-month sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). It is a sentence that reflects the seriousness of the offenses of conviction, promotes respect for the law, provides just punishment, affords adequate deterrence and protects the public from further criminal conduct by Mr. Jimenez. A longer term of incarceration would be greater than necessary to accomplish those goals.

The suggested sentence has two components – a one-month concurrent sentence on Counts 1-7 and mandatory minimum 24-month sentence on Counts 8-9.

1.  **The Court Should Impose A One-Month Sentence On Counts 1-7**

Not only is a one-month concurrent sentence sufficient to comply with the sentencing factors in 18 U.S.C. § 3553, it is also within a properly calculated advisory Sentencing Guideline range. The Probation Office correctly calculated the advisory Total Offense Level for Counts 2-7 at 6. For the reasons set forth below, the advisory Total Offense Level for Count One is 8, not 12 as the Probation Office has calculated. The offenses are grouped (the Probation Office agrees) and the advisory Sentencing Guideline range at Level 8 and CH category III is 6-12 months in Zone B – which permits incarceration for as little as one month. *See* U.S.S.G. § 5C1.1(c)(2).

The court can arrive at an advisory Zone B Sentencing Guideline range for all non-aggravated identity theft counts in a number of ways. First, the court could find that the four-level enhancement in U.S.S.G. § 2L2.2 for making a false statement to secure a passport does not apply where a defendant is a US citizen and did not obtain the passport for the purpose of fraudulently obtaining citizenship. The four-level enhancement became effective on November 1, 2004 – three days before the November 4, 2004 date on the passport application at issue in this case – and was added specifically to respond to comments from federal agencies "to the effect that maintaining the integrity of United States passports is at the core of United States border security efforts." 2004 U.S.S.G. Appendix C, Amendment 671, <u>Reason for Amendment</u>. Passport fraud by a United States citizen in no way implicates border security concerns.

Second, should the court find that the four-level enhancement applies as a matter of mechanical guideline calculation, the court could find that passport fraud by a United States citizen is outside heartland given that border security is the stated purpose for the

enhancement. The court could properly depart for that reason alone, or for that reason in combination with other departure grounds set forth below.

Third, even if the court were to find that a departure was not warranted, the court should find, for all of the reasons set forth below, that a one-month concurrent sentence on Counts 1-7 is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a) (1) and (2).

> 2. **The Court Should Impose A Single Concurrent Two-Year Sentence On Counts 8 and 9**

Subject to and without waiving his objections that one cannot violate the Aggravated Identity Theft statute, 18 U.S.C. § 1028A, by possessing the means of identification of a deceased person and that the appropriate sentence for Counts 8 and 9 is no sentence, Mr. Jimenez urges the court to impose two-year sentences to run concurrently on each count. The statute and the advisory Sentencing Guidelines expressly provide that the court has discretion to impose concurrent two-year mandatory minimum sentences for multiple counts of Aggravated Identity Theft. *See* 1028A(b)(4) and U.S.S.G. § 2B1.6 Application Note 1(B).

The court should impose a concurrent sentence because the harms the statute was primarily intended to deter and punish were completely lacking in this case. There can be no doubt that Congress passed § 1028A out of concern for the havoc caused in the lives of living persons when their identities are stolen and used by someone else. *See* H.R. Rep. 108-528 at 2, U.S.S.C.A.N. 779 at 4 (June 8, 2004) ("almost 10 million Americans were victims of some form of identity theft within the last year," costs to "individual consumers are estimated to be approximately $5.0 billion"). *See also Id*. at 4-6 ("identity thieves are obtaining individuals' personal information for misuse … through accessing

3

information that was originally collected for an authorized purpose. The information is accessed either by employees of the company or of a third party that is authorized to access the accounts in the normal course of business, or by outside individuals who hack into computers or steal paperwork likely to contain personal information").

To be sure, Congress was also concerned with identity theft by terrorists, but that concern is addressed in a separate section of the statute that the government did not charge here. *See* 18 U.S.C. § 1028A(a)(2). There is no indication here or, more importantly, no evidence, that Mr. Jimenez is a terrorist or committed predicate terrorist acts.

Finally, the increased penalty provisions of § 1028A, over and above the penalties imposed on the underlying predicates, were intended to punish only "serious crimes." *See* House Report at 3 (the statute "provides enhanced penalties for persons who steal identities to commit terrorist acts, immigration violations, firearms offenses, and other *serious crimes*") (emphasis supplied). *See also* October 4, 2005 Memorandum and Order on Defendant's Motion to Dismiss at 3-4 ("[h]ence, section 1028A, while it includes some of the same conduct that is more broadly punished by section 408(a)(7)(B), is focused on a narrower spectrum of defendants whose conduct is directly related to *serious* crimes of identity fraud or to acts of terrorism (or conceivably both)") (emphasis supplied).

Even under the broadest definition of "serious crime," use of a social security number of a deceased person for the sole purpose of obtaining telephone service – and then paying the telephone bill – should not be deemed sufficiently serious to warrant a

4

two-year sentence on and after a sentence for the underlying predicate and on and after another two-year aggravated identity theft sentence.

### Argument

1. **The Court Is Required To Impose A Sentence Sufficient But Not Greater Than Necessary To Comply With the Purposes Set Forth in 18 U.S.C. § 3553(a)(2)**

After *Booker*, a sentencing court must impose a sentence minimally "sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). *See also United States v. Foreman*, 436 F.3d 638, 643-44 & n.1 (6th Cir. 2006) ("a district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2)"); *United States v. Cawthorn*, 419 F.3d 793, 802 (8th Cir. 2005) ("district court's duty" is that it "shall impose a sentence sufficient but not greater than necessary"). The court is required to consider the following sentencing factors:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed--
>
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> **(B)** to afford adequate deterrence to criminal conduct;
>>
>> **(C)** to protect the public from further crimes of the defendant;  and
>>
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence and the sentencing range established for--

> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the [United States Sentencing G]uidelines--
>
> …
>
> **(5)** any pertinent policy statement--
>
> > **(A)** issued by the Sentencing Commission …
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;  and
>
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  For the reasons that follow, a total sentence of 25 months is sufficient but not greater than necessary to comply with all of the § 3553 factors the court is required to consider.

> **A.  A Total Sentence of 25 Months Is Appropriate Given The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant**
>
> > **i.   The History and Characteristics of Mr. Jimenez**

Mr. Jimenez changed his identity to Barry Abraham so that he could avoid the consequences of his relatively minor but nevertheless life-complicating criminal record as Jose Jimenez.  He changed his identity so that he could better provide for his wife and his six children, all under the age of six.  He wanted a decent job with benefits such as health care, which his felony record effectively precluded.

Mr. Jimenez largely succeeded in doing just that.  He worked as a construction worker for LaRosa Building Group, obtained licensing as a vendor and operated a food cart and embarked just prior to his arrest on a promising business relationship with the proprietor of a towing company.  The Presentence Report documents a five-year period of employment under his true name and as Barry Abraham.  *See* PSR at ¶¶ 61, 74-81.

6

Mr. Jimenez' commitment to provide for his family and better their lives cannot seriously be disputed. Together with his wife since 1998, Mr. Jimenez and his family put down roots in the Springfield area in 1999 and struggled to make a life together. At one point, Mr. Jimenez was living with his family in Springfield, attending Borough of Manhattan Community College in New York City and conducting a car buying and selling business in Bridgeton, New Jersey. *Id*. at ¶¶ 61, 71 and 80.

Mr. Jimenez' dedication to his family, his history of hard work, his and his family's roots in the community and his efforts to better himself so that he could create a stable and financially secure existence for his family are the true picture of Jose Jimenez. Mr. Jimenez lived openly as Barry Abraham for more than three years before his arrest. He worked to support his family, opened bank accounts into which he deposited money he earned and *paid his taxes*. These hard facts – this real history – fatally undercut the government's utterly speculative characterization of Mr. Jimenez as a serial identity changer who must have been up to, or was planning, something really nefarious.

### ii. The Nature and Circumstances of the Offenses

A one-month sentence for all of the non-aggravated identity theft counts is appropriate and sufficient given the nature and circumstances of the offenses of conviction. What the offenses boil down to is misuse of a social security number to open two bank accounts and to obtain two forms of identification as Barry Abraham – a driver's license and a passport – and to obtain telephone service as David Davison. Obtaining the passport carried absolutely no immigration consequences as Mr. Jimenez is a United States citizen. The passport fraud offense, for that reason, is less serious than the typical passport fraud case in which a non-citizen gains not only a form of

identification, but all of the benefits of citizenship as a result of fraud. As for the bank account-related counts, there was no evidence at trial that Mr. Jimenez misused the banks or obtained any benefit other than the typical benefits of having a repository to deposit checks and the means to write checks.

Concurrent as opposed to consecutive two-year sentences for the two counts of identity theft are also appropriate and sufficient given the nature and circumstances of the offenses of conviction. As the court already has noted in denying Mr. Jimenez' motion to dismiss the two aggravated identity theft counts, § 1028A is reserved for serious offenses:

> While 42 U.S.C. § 408(a)(7)(B) applies to the fraudulent misuse of a Social Security number for any purpose regardless of the grade of the crime involved, the aggravated sentences imposed by 18 U.S.C. § 1028A(1) & (2) are triggered only by the conviction of a felony enumerated in subsection (c) of section 1028A … **Misusing a Social Security number to obtain a driver's license or to commit a misdemeanor crime (or an unlisted felony) in punishable under section 408(a)(7)(B), but not under the more stringent provisions of section 1028.** …
>
> **Hence, section 1028A, while it includes some of the same conduct that is more broadly punished by section 408(a)(7)(B), is focused on a narrower spectrum of defendants whose conduct is directly related to serious crimes of identity fraud** or to acts of terrorism (or conceivably both).

October 4, 2005 Order at 2-3, 3-4 (parentheticals in original, footnote omitted, emphasis supplied).

If misusing a social security number to obtain a driver's license would not trigger enhanced punishment under § 1028A because it falls outside the "narrower spectrum" of conduct that is "directly related to serious crimes of identity fraud," then misusing a

8

social security number to obtain telephone service is not the type of serious offense that would warrant a consecutive two-year sentence in and of itself.

Mr. Jimenez was convicted of providing to Verizon as part of the application process to obtain telephone service a social security number issued to David Davison. He was not convicted of obtaining a duplicate social security card in Davison's name or bearing Davison's number. He was not convicted of obtaining any other identification in Davison's name, such a driver's license, birth certificate or passport. No such identification documents bearing Davison's name were found in the course of exhaustive searches of multiple locations following Mr. Jimenez's request.

By no measure does misuse of a social security number to obtain telephone service constitute the kind of serious crime of identity fraud the court reasoned that Congress had in mind as deserving of the aggravated penalty set forth in § 1028A – particularly where the social security number misused is not one currently in use by another living person and the harms the statute was designed to address are not implicated in the slightest.

Given its denial of Mr. Jimenez' motion to dismiss and the jury verdict, the court is bound to impose a two-year sentence for use of the David Davison Social Security number in connection with obtaining telephone service. The court is not required, and should not for the foregoing reasons, impose that sentence to run consecutively to the sentence on the other aggravated identity theft count.

### B. A 25-Month Sentence is Sufficient But Not Greater Than Necessary To Comply With The Sentencing Factors Set Forth In 18 U.S.C. § 3553(a)(2)

A 25-month sentence is sufficient to promote respect for the law, to provide just punishment for the offense and to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553 (a)(2)(A) and (B). It is also more than sufficient to specifically deter Mr. Jimenez from committing another crime.

Mr. Jimenez exhibits many of the characteristics that the Sentencing Commission has identified as indicators of reduced rates of recidivism. He is 31 years old, has a high school education with some college, a stable employment history, is married with a large family and is a non-violent offender who does not use drugs. Two recent studies conducted by the Sentencing Commission, entitled <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines</u> (hereinafter "Release 1"), http://www.ussc.gov/publicat/Recidivism_General.pdf; and <u>A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score</u> (hereinafter "Release 2"), http://www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf, include the following findings:

- Age: "Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% over age 50.[1] Under the Parole Commission's Salient Factor Score (SFS), which is a better predictor of recidivism than Criminal History Category, the older the defendant is and the fewer the number of prior commitments, the less likelihood of recidivism. Age is a powerful component of recidivism prediction, which the Guidelines do not take into account.[2]

---

[1] Release 1 at 12 & Exhibit 9.

[2] Release 2 at 8, 13-15.

- Employment: Stable employment in the year prior to arrest is associated with a lower risk of recidivism.[3]

- Education: Recidivism rates decrease with educational level (no high school, high school, some college, college degree).[4]

- Family: Recidivism rates are associated with marital status (never married, divorced, married).[5]

- Non-Violent Offenders sentenced under the fraud, larceny and drug guidelines are the least likely to recidivate.[6]

- Recidivism rates are lower for those without illicit drug use in the year prior to the offense.[7]

Mr. Jimenez' history of hard, legitimate work to support his family and his record demonstrate that he is not a person who has made a choice to lead a life of crime. He will pay dearly for the instant offenses, not only with the loss of his liberty, but with the likely breakup of his family.

The court is also required to consider whether the sentence provides a defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the kinds of sentences available, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct and the need to provide restitution. *See* 18 U.S.C. §§ 3553(a)(2)(D), (3), (6) and (7). Of these factors, the kinds of sentences available

---

[3] Release 1 at 12 & Exhibit 10.

[4] *Id*. at 12 & Exhibit 10.

[5] *Id*. at 12 & Exhibit 10.

[6] *Id*. at 13 & Exhibit 11.

[7] *Id*. at 13 & Exhibit 10.

(concurrent sentences for aggravated identity theft counts) and the need to avoid unwarranted sentencing disparities are relevant. In counsel's experience, and presumably in the court's more comprehensive institutional experience, passport fraud by a United States citizen is a relatively rare event. Imposing a sentence lower than that imposed in a more typical case where passport fraud confers the trappings of citizenship would not result in *unwarranted* disparity. To the contrary, it would properly take into account all of the sentencing factors set forth in § 3553 and would treat Mr. Jimenez as a flesh and blood individual, which the First Circuit Court of Appeals emphatically emphasized even when the Guidelines were mandatory:

> [T]he guidelines provide uniformity, predictability, and a degree of detachment lacking in our earlier system. This too must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.

*United States v. Olbres*, 99 F.3d 28, 36-37 (1st Cir. 1996) (citation omitted).

### C. A 25-Month Sentence is Consistent With A Properly Calculated Advisory Sentencing Guideline Range

The court is also obligated to consider the advisory Sentencing Guideline calculation and relevant policy statements. *See* 18 U.S.C. § 3553(a)(4) and (5). Mr. Jimenez objects to the First Circuit's rationale in *United States v. Jimenez-Beltre*, 440 F.3d 514 (1st Cir. 2006) that the guidelines are entitled to "substantial weight" and that they "cannot be called just 'another factor' in the statutory list, … because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges." *Id*. at 516 (quoting district court

judge) and 518 (Howard, J., concurring).  For the reasons set forth by Judge Lipez in his dissent, attributing more weight to the guidelines than to the other § 3553 factors would effectively make the guidelines as unconstitutionally binding as they were before *Booker*:

> The guidelines are no longer self-justifying. They are not the safe harbor they once were.  However, if district courts assume that the guidelines sentence complies with the sentencing statute, and focus only on the compliance of the non-guidelines sentence urged by the defendant, the district courts will effectively give the guidelines a controlling weight and a presumptive validity that is difficult to defend under the constitutional ruling in *Booker*. . . . [G]iven the close divisions on the Court about the post-*Booker* role of the guidelines, and given the new composition of the Court, it would be foolhardy to ignore the constitutional dangers of adopting an approach to the guidelines post-*Booker* that approximates, in a new guise, the mandatory guidelines.

Jimenez-Beltre, 440 F.3d at 526-27, 528 & n.11  (Lipez, J., dissenting).  *See also Booker*, 243 U.S. at 300 (Stevens, J., dissenting: "[the] sentencing range is now nothing more than a suggestion that may or may not be persuasive to a judge when weighed against the numerous other considerations" in § 3553(a)); *Booker*, 243 U.S. at 305 (Scalia, J., dissenting: "logic compels the conclusion that the sentencing judge, after considering the recited factors (including the Guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range.  If the majority thought otherwise, if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so").

    That being said, a one-month concurrent sentence for all non-aggravated identity theft counts is within the range of a properly calculated Sentencing Guideline range.  All such counts are grouped and the highest offense level of 8 – the unenhanced base offense

level for passport fraud found in U.S.S.G. § 2L2.2.  *See* discussion in "Summary of Argument" section above.  That results in a range of 6-12 months in Zone B of the Sentencing Table (for criminal history categories II and III), which permitted the court under the mandatory pre-*Booker* scheme to impose a sentence of incarceration as low as one month.  *See* U.S.S.G. § 5C1.1(c)(2).

That is the range before the court applies a two level adjustment for acceptance of responsibility and considers whether to depart downward.  For the reasons set forth in Mr. Jimenez' objections to the Presentence Report, the court should grant a two-level reduction for acceptance of responsibility and/or should depart downward on grounds that: (a) Mr. Jimenez' criminal history category overstates the seriousness of his past conduct and his risk of recidivism; (b) passport fraud by a person already a United States citizen is outside the heartland of passport fraud contemplated by the four-level enhancement in § 2L2.2 enacted three days before the offense of conviction to address concerns about border security; and (c) the conditions of confinement at the Plymouth County Correctional Facility ("PCCF") are more severe than they should be for a defendant awaiting trial, and more severe than the conditions at the federal institution where Mr. Jimenez will be confined upon conviction.

Defendant reports that conditions in PCCF are more severe than in the notorious Rikers Island, where defendant served a prior sentence.  Federal detainees at PCCF are not entitled to participate in any of the programs at the facility.  Medical care is practically non-existent.  Mr. Jimenez has made numerous oral and written requests to see a doctor for severe chests pains.  He has not been seen.  The quality of medical care at PCCF was the subject of a recent meeting between the Federal Defender, the US Marshal

Service and PCCF staff. Finally, no dietary accommodation is made for Muslims. Muslims usually are provided with kosher trays, but not uniformly.

## Conclusion

For all of the foregoing reasons, the court should impose a 25-month sentence with credit for all time served since Mr. Jimenez' arrest by the Springfield, Massachusetts Police on January 11, 2005.

JOSE JIMENEZ
 By his attorney,

/s/ *E. Peter Parker*
E. Peter Parker
 B.B.O. #552720
One Commercial Wharf North
Second Floor
Boston, MA  02110
(617) 742-9099

Certificate of Service

I, E. Peter Parker, certify that I served a copy of this pleading on AUSA B. Stephanie Siegmann and on the Probation Office on June 5, 2006.

/s/ *E. Peter Parker*
E. Peter Parker